OPINION OF THE COURT
Israel Rubin, J.
This is an action by a director and shareholder of class B stock in a joint venture with Samsung America, Inc., the owner of all the class A stock, alleging, inter alia, that defendants “connived to wreck” the joint venture, organized under the laws of the State of New York as Charisma Le Sac, Inc., and to convert its assets “to their individual benefit and profit.” Named as defendants are Samsung America, Inc. (Samsung America), Samsung Company, Ltd. (Samsung Korea), and three directors of Charisma Le Sac (Charisma), Y.S. Sunwoo, K.H. Sohn, and H.J. Hwang, individually. Defendants moved to dismiss the complaint for failure to state a cause of action and on the ground that the court lacks personal jurisdiction of all defendants except Samsung America. The jurisdictional issues were referred to Trial Term, Part 10, for assignment to hear and report with recommendations. Defendant now moves to set *178 aside, and plaintiff to confirm, the referee’s report which recommended that this court retain jurisdiction of all named defendants. Defendant Samsung Korea further seeks to withdraw its motion to dismiss for lack of in personam jurisdiction.
I. IN PERSONAM JURISDICTION
Having submitted the question of jurisdiction to the court and litigated the issue in its papers, Samsung Korea cannot withdraw its motion to vacate simply because it perceives from the referee’s report that it may sustain a ruling adverse to its interests. (Marsh v Marsh, 63 NYS2d 42; Wallace v Ford, 44 Misc 2d 313.) The referee determined that Samsung Korea “retained complete control over its wholly owned New York subsidiary,” and the record amply supports the conclusion that “The Samsung Group is a leading business conglomerate operated under the umbrella of common management control” (1979 Annual Report, p 16). The evidence adduced at the hearing indicates that the New York corporation is listed as a branch of Samsung Korea, that there is a substantial interchange of personnel (including the individual defendants) between the Korean parent, the New York corporation and other subsidiaries, that the earnings of Samsung America are consolidated in the financial statement of Samsung Korea, and that management decisions affecting the joint venture are dictated from the home office. Under these facts, it is clear that Samsung Korea is doing business in New York State and is subject to the jurisdiction of this court (Delagi v Volkswagenwerk AG., 29 NY2d 426; Taca Int. Airlines v Rolls-Royce of England, 15 NY2d 97).
In order to subject the individual defendants to the jurisdiction of a New York court, minimum contacts with the State must be established (Hanson v Denckla, 357 US 235). Fundamental to this consideration are the relationship of those contacts to the cause of action, and the interest of the State in asserting jurisdiction over the particular defendant (Shaffer v Heitner, 433 US 186).
The primary contact of the individual defendants with this jurisdiction is as directors of a New York corporation. The corporation, as an entity under the law, is purely a creature of statute, and all authority for the directors to *179 exercise control over corporate affairs is conferred by the laws of this State. The constitutional prerequisite to jurisdiction is thereby established. As the court stated in Hanson v Denckla, “it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws” (357 US, at p 253). Having availed themselves of the privilege of conducting the affairs of a corporation under the protection of New York law, the individual defendants have established sufficient contacts with the State to subject them to the jurisdiction of its courts without offending “ ‘traditional notions of fair play and substantial justice’ ” (International Shoe Co. v Washington, 326 US 310, 316).
Having found minimal contacts with the jurisdiction, it is necessary to relate those contacts to the cause of action and to determine whether New York possesses an interest in asserting jurisdiction over the individual defendants (International Shoe Co. v Washington, supra, at pp 319-320). While it is logical to expect a benefit to the corporate defendants from such asserted acts as the transfer of Charisma’s assets to Samsung America, failure to honor Charisma’s contracts and failure to demand replacement or reimbursement for defective goods sold to Charisma by Samsung America, there is no evidence that the individual defendants derived any personal benefit. Rather, the pleadings indicate that they acted in the interests of their employer, Samsung America.
New York law, however, makes an officer or director liable for misconduct in the management of corporate assets (Business Corporation Law, § 720). Suit may be brought by a director (among others) to compel the defendant “to account for his official conduct” in the case of:
“(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
“(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.” (Business Corporation Law, § 720, subd [a], par [1], els [A], [B].)
*180 The suit may also seek to set aside or enjoin the unlawful conveyance (Business Corporation Law, § 720, subd [a], pars [2], [3]). Under the allegations in the complaint, the individual defendants are answerable for alleged misconduct in transferring the assets of Charisma to defendant Samsung America and for failure to enforce various agreements in favor of Charisma.
The nature of the action is inherently related to the activities of the individual defendants as directors of Charisma. Moreover, New York State has a strong interest in regulating the affairs of corporations to which its law gives substance and in preventing abuse of the corporate form. To this end, the Legislature has provided that individual officers and directors be accountable for misappropriation and mismanagement of corporate assets. It would seem axiomatic that a New York court may exercise personal jurisdiction over a director charged with the misuse of the powers granted him by the laws of this State to systematically mismanage and divert the assets of a corporation organized thereunder. The jurisdictional issue, however, is burdened with further complications beyond the constitutional considerations just outlined.
The individual defendants contend that they are not subject to in personam jurisdiction under New York’s long-arm statute which provides, inter alia, that a court may exercise personal jurisdiction over a nondomiciliary who
“3. commits a tortious act without the state causing injury to person or property within the state * * * if he
“(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state”. (CPLR 302, subd [a], par 3, cl [i].)
Reduced to its essentials, the individual defendants present the following thesis: The Supreme Court decision in Shaffer v Heitner (supra) requires a statutory expression of the State’s interest in exercising jurisdiction over a nonresident officer or director of a New York corporation (433 US, at p 216). In Platt Corp. v Platt (17 NY2d 234), the New York Court of Appeals held that the out-of-State actions of a director of a New York corporation are insufficient as a *181 basis for the exercise of personal jurisdiction. Under the so-called fiduciary shield doctrine, even in-State activities of directors are insufficient to confer jurisdiction over them for individual wrongs, even where the tort sued upon was committed in New York (Marine Midland Bank v Miller, 664 F2d 899). Therefore, the individual defendants submit, this court lacks jurisdiction over their persons.
Given the rather extreme lengths to which this asserted bar to the exercise of jurisdiction is being pressed, a close examination of the underlying rationale is warranted.
In Shaffer (supra), the court held that the exercise of jurisdiction by a State court is subject to the minimum contacts test of International Shoe Co. v Washington (326 US 310, supra). (Shaffer v Heitner, 433 US 186, 215-216, supra.) It struck down the State court’s exercise of jurisdiction predicated on the defendant’s ownership of stock in a Delaware corporation; Delaware’s sequestration statute deems the situs of the shares to be within the State regardless of the location of the stock certificates (supra, at pp 213-214). In dictum, the court stated that if a State had an interest in exercising jurisdiction over the fiduciaries of a corporation, “we would expect it to have enacted a statute more clearly designed to protect that interest” (supra, at p 215).
Shaffer (supra) has been criticized as being “premature and incomplete” in its consideration of a State’s interest in regulating corporations organized under its laws and of the contacts between the State and the corporations it charters (Measuring the Long Arm after Shaffer v Heitner, 53 NYU L Rev 126), and more than one commentator has concluded that the finding of insufficient contacts to support jurisdiction was simply wrong (id., at pp 139-141; see, also, Letter, Shaffer v Heitner, 53 NYU L Rev 1315,1318). It is not even clear whether the requirement of a statutory codification of State interest was meant to restrict jurisdiction to cases falling under a specific statute, or whether the mere existence of a statute conferring long-arm jurisdiction might be sufficient to elevate otherwise inadequate contacts to constitutional sufficiency, thereby expanding the scope of State jurisdiction (id., p 1316).
*182 Whatever may be concluded from the Shaffer decision (supra), it is clear that the jurisdictional basis of the case at bar encompasses more than the mere status of the defendants as directors of a New York corporation. It is clear from the pleadings that defendants are employees of defendant Samsung America, which is admittedly doing business in New York. It is also apparent that defendants represent the interests of Samsung America (and thereby Samsung Korea) on the board of directors of Charisma. The referee found that the individual defendants attended meetings of the board in New York until February, 1980, and there is evidence that thereafter they continued to visit the New York City office of Charisma to direct corporate business. In addition, the referee concluded that “[t]he individual defendants have not denied the [tortious] acts alleged by plaintiff. They have merely denied doing them in New York!”
Defendants, however, maintain that the fact these acts were performed out-of-State insulates them from the jurisdiction of New York courts, citing Platt Corp. v Platt (17 NY2d 234, supra). But Platt is distinguishable in that the director, Blumberg, was entirely passive in his role and took no affirmative part in directing corporate affairs. While Blumberg’s conduct was sufficient to render him liable for neglect of his duties pursuant to section 720 of the Business Corporation Law (the statute sought to be enforced in the instant action), the failure to avail himself of the benefits and protections of New York law failed to meet the constitutional minimum for contact with the jurisdiction.
In the case at bar, defendants were actively engaged in the management of the corporation at the time of the alleged tortious misconduct. It is nevertheless argued that the fiduciary shield doctrine does not permit acts performed as fiduciaries of the corporation to be the predicate for jurisdiction over the directors individually. Such acts are said merely to confer jurisdiction over the corporation on behalf of which the director serves, even where those acts are tortious (Marine Midland Bank v Miller, 664 F2d 899, supra; United States v Montreal Trust Co., 358 F2d 239; Bulova Watch Co. v Hattori & Co., 508 F Supp 1322; Yardis Corp. v Cirami, 76 Misc 2d 793).
*183 This fiduciary shield doctrine has now apparently been embraced by the Court of Appeals (Laufer v Ostrow, 55 NY2d 305). The fiduciary shield doctrine, however, as articulated by the Federal courts is not a principle of jurisdiction, but of equity. As the Second Circuit stated it in Marine Midland Bank v Miller, “The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long arm statute” (664 F2d 899, 902, n 3, supra). The court went on to say, “As an equitable principle, the fiduciary shield doctrine is not applied mechanically; the determination of the appropriateness of its application requires an analysis of the particular facts of the case. In each instance, fairness is the ultimate test” (supra, at p 903). What is “fair” under the circumstances is not determined by the constitutional measure of International Shoe (supra), however, but by the equitable considerations of the doctrine, as defined by the Federal courts.
Whether or not there is any need to graft this added complication onto an already complex body of law, the doctrine has been severely criticized for its dearth of theoretical legitimacy. As Honorable Joseph M. McLaughlin concluded succinctly, “There is little policy, and even less logic to commend it” (McLaughlin, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, 1983-1984 Pocket Part, CPLR C302:3, p 32, see, also, pp 40, 44). The pronouncements of the Federal courts are not controlling under the rule of Erie R. R.Co.v Tompkins (304 US 64). But to the extent that the decision by the Court of Appeals in Laufer (supra) represents an indorsement of the fiduciary shield doctrine, this court holds that the equities in the case at bar weigh heavily in favor of the exercise of its jurisdiction over the defendants’ persons. Each case, when applying the fiduciary shield doctrine must rest on its own particular facts and circumstances. Unlike Laufer (supra), which involved a New Jersey corporation, and the solicitation of sales in New York, at issue here is a multinational corporation having its principal place of business in Korea, controlling a New York corporation which is its wholly owned subsidiary. Further, New York contacts involve the subsidiary’s participation as a *184 stockholder in a joint venture in another New York corporation, Charisma Le Sac, Inc., with the plaintiff and others and the individual defendants’ active participation in the running of the affairs of the corporations.
To decline jurisdiction under the facts presented would be to elevate form over substance. The conduct complained of constitutes engagement in a “persistent course of conduct” within this jurisdiction and the ambit of the laws of this State (CPLR 302, subd [a], par 3, cl [i]). The individual defendants can hardly profess surprise at being required to defend an action before the courts of a State, the laws of which they are charged with misusing. The very fact that they were employed by one New York corporation to direct the affairs of another New York corporation inextricably links the action with this jurisdiction. The contacts of defendants with this State and the misconduct charged are innately related, and defendants will not be heard to complain that equity bars this court from exercising its authority.
One final factor militates strongly in favor of upholding jurisdiction over all the defendants. This court takes judicial notice that New York City, more precisely the Borough of Manhattan, is the national distribution center of all manner of wearing apparel. If, as the complaint asserts, defendants engaged in a conspiracy to wreck Charisma, removal of the corporate headquarters from New York City to Fort Lee, New Jersey (literally on the other side of the George Washington Bridge from Manhattan), could be seen as a deliberate attempt to frustrate a suit by plaintiff. If he cannot sue the individual defendants in this jurisdiction, is he to be required to pursue them around the world (wherever their employer might assign them)? Is the will of the State Legislature that directors be accountable for misappropriation of corporate assets to be similarly frustrated? To do so is to invite the misuse of the corporate entity for fraudulent purposes. Given the potential impediment which the fiduciary shield doctrine presents to the legitimate State interest in regulating the corporations created under its laws, it would behoove the Legislature to extend jurisdiction over officers and directors to the consti *185 tutional limit by making acceptance of the office a consent to jurisdiction in this State (see, e.g., Del Code Ann, tit 10, § 3114).
II. SUFFICIENCY OF THE PLEADINGS
Defendants’ original motion sought dismissal of the complaint on a variety of grounds, including failure to state a cause of action.
The Business Corporation Law gives a director broad rights to sue fellow directors for breach of their duties and waste of corporate assets, whether such wrongs are committed intentionally, through negligence or as a result of predatory acquisition (Rapoport v Schneider, 29 NY2d 396, 400). Without belaboring the issues, it can be stated that plaintiff has set forth sufficient allegations of wrongdoing to require the individual defendants to account for their conduct. The corporate defendants are appropriate parties to the action as transferees of the assets diverted from Charisma (Baker v Baker, 122 Misc 757, affd 212 App Div 850; Katz v Braz, 188 Misc 581, affd 271 App Div 970).
The first cause of action charges that the directors failed to enforce a subscription agreement and issued stock to Samsung America without the requisite payment (Business Corporation Law, § 503, subd [c]). The second cause of action charges that they wrongfully transferred the assets of the corporation to Samsung America. The fourth cause of action asserts that the directors maliciously interfered with contracts to the detriment of Charisma, its creditors and shareholders. (As indicated both by the transcript of the hearing before the referee and defendants’ answer, there is no question that plaintiff is a shareowner in the corporation.) Finally, the fifth cause of action alleges that defendants accepted defective goods from Samsung America without seeking reimbursement or replacement. It is charged that these acts were part of a conspiracy to wreck the corporation and divert its assets. Similar charges have been found sufficient in the context of stockholder’s derivative actions (Sterne v Orenstein, 42 NYS2d 314 [conspiracy to wreck corporation]; Meredith v Camp Hill Estates, 77 AD2d 649 [transfer of assets without consideration]; Kleiber v Blumenschine, 81 NYS2d 311 [assets transferred *186 to another corporation at grossly inadequate prices]; Aronoff v Albanese, 85 AD2d 3 [modification of lease to detriment of corporation]).
Nor is there merit to defendants’ contention that plaintiff has failed to disclose the circumstances surrounding the alleged fraudulent conspiracy pursuant to CPLR 3016. The complaint gives defendants sufficient notice of the events out of which plaintiff’s grievance arises and ,of the theory on which he is proceeding (Aronoff v Albanese, 85 AD2d 3, 6, 7, supra; CPLR 3013).
As to the third cause of action, which seeks reimbursement for wages payable under an employment contract following plaintiff’s alleged wrongful termination as president of the corporation, the claim cannot be said to involve mismanagement of corporate assets within the purview of section 720 of the Business Corporation Law. The action is clearly one for breach of contract against the corporate employer, since directors possess broad discretion to terminate employment with or without cause (Avien, Inc. v Weiss, 50 Misc 2d 127; Matter of Paramount Publix Corp., 90 F2d 441; 111 ALR 889). Plaintiff, however, asserts that all actions taken by the individual defendants were ultra vires because defendant Samsung America failed to make full payment for its shares pursuant to the subscription agreement. Therefore, plaintiff asserts, Samsung America had no authority to appoint the individual defendants as directors of Charisma, and the individual defendants had no power to terminate his employment.
In the absence of a strong indication that Samsung America did not make payment for its shares in Charisma (a showing not evident in the complaint), plaintiff’s theory is entirely conclusory. Even assuming, arguendo, that payment had not been made, the individual defendants would nevertheless be entitled to rely on their status as directors. Unless it could also be established that they were fully aware of the unlawfulness of their appointment, there would be no basis for imposing individual liability. The pleadings present no basis for such a conclusion. Therefore, plaintiff’s third cause of action fails to state a complaint.
Accordingly, defendants’ motion to set aside the referee’s report is denied and plaintiff’s cross motion to confirm is *187 granted. Defendants’ motion to dismiss plaintiff’s third cause of action is granted with leave to replead, setting forth facts sufficient to constitute a cause of action, within 20 days after service of a copy of the order to be entered herein together with notice of entry. Defendants’ motion is in all other respects denied.