Ronald **LAWFORD**, Plaintiff,

v.

**NEW YORK LIFE INSURANCE COMPANY, and New York Life Insurance Company of Canada, Defendants.**

No. 89 Civ. 4394 (PKL).

United States District Court, S.D. New York.

June 18, 1990.

Sedgwick, Detert, Moran & Arnold, New York City (James T. Conlon, John P. Reilly, of counsel), for plaintiff.

Jackson & Nash, New York City (Christopher S. Rooney, Jacqueline M. Merson, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

This is an action brought pursuant to Section 510 of the Employee's Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, with pendant common law claims. Plaintiff alleges that he was fired from his position in order to limit his accrual of pension benefits and contractual commissions. Defendants have brought the instant motion to dismiss plaintiff's complaint on a variety of grounds, including failure to state a claim on which relief may be granted, lack of personal jurisdiction over defendant New York Life Insurance Company of Canada ("NYLCAN"), lack of subject matter jurisdiction, and for *forum non conveniens.* Defendants have moved for summary judgment on certain of plaintiff's claims pursuant to Fed.R.Civ.P. 56. Defendants also demand a bond for costs pursuant to Local Rule 39.[1] For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Ronald Lawford ("Lawford"), a citizen and resident of Canada, went to work for defendant New York Life Insurance Company ("New York Life") as a sales agent in July 1979. In July 1981, Lawford became an assistant manager, and, in March 1985 he was promoted to the

---

1. Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York.

position of Associate Agency Manager of the Saskatoon, Saskatchewan, Canada office. On March 31, 1986 he was appointed as General Manager of the Saskatoon office. Prior to his assumption of the General Manager's position, Lawford signed a "General Manager's Employment Agreement" with New York Life. That one-page employment contract on its terms cancelled any other employment agreements between plaintiff and New York Life. The agreement further stated that "The General Manager's employment under this Agreement may be terminated with or without cause, by the Company upon written notice, such termination to take effect as of the date specified in such notice." Affidavit J. Carl Copeland, sworn to on August 11, 1989 ("Copeland Aff."), Exh. B, ¶ 4. In addition to a regular salary, general managers at New York Life received commissions depending upon the performance of the office in their charge. *See* General Managers' Compensation Plan, attached as Exh. C to Copeland Aff. Further, Lawford received a full benefits package which included medical insurance and the right to accrue pension benefits.

Lawford's tenure as General Manager of the Saskatoon office lasted until July 6, 1988, when he received notice of his dismissal, effective July 15, 1988.[2] Defendants claim that Lawford was dismissed because the performance of the Saskatoon office declined precipitously during the time Lawford was General Manager. Defendants trace that office's decline directly to Lawford's performance. In particular, defendants claim that Lawford was a poor personnel manager, resulting in a number of sales agents leaving the office prematurely, and failing to get the remaining agents to perform at an optimum level. Plaintiff does not deny that the office's financial performance declined during his tenure. However, plaintiff alleges that that decline was the result of a downturn in the Saskatchewan economy, and of New York

Life's decision to make personnel cutbacks in certain offices, including in the office in Saskatoon. Plaintiff alleges the defendants' decision to terminate him was not based on his performance, but was instead motivated by a decision to reduce the cost of Canadian operations. Plaintiff contends that he was dismissed in order to save on costs. In particular, plaintiff maintains that defendants chose to dismiss him to prevent him from obtaining higher pension benefits and to avoid paying him certain commissions that were due and owing to him.

At the time of his termination, plaintiff was offered a severance package. First, New York Life offered plaintiff a job in the "field," which the Court interprets as an offer to return to the position of a sales agent or the equivalent. In the alternative, defendants offered four months salary and relocation assistance. Lawford Aff., Exh. C. Plaintiff apparently indicated to New York Life that he was unsatisfied with that package. Thus, on July 25, 1988, New York Life made a second offer to plaintiff, offering compensation equal to six months pay, as well as continued group and health insurance for up to six months. Lawford Aff., Exh. B. Plaintiff also rejected this offer, indicating that he wished to receive at least nine months compensation and benefits. Lawford Aff. Exh. D. It appears that New York Life did not respond to plaintiff's request for a larger severance package. Indeed, there appears to have been no further communication between the parties regarding severance. It seems that plaintiff has never received any severance pay from New York Life.

At the time of his discharge, plaintiff believed that his pension benefits had not, and would not vest, resulting in the loss of substantial future income. Lawford Aff., Exh. D. In fact, a portion of plaintiff's complaint is based on the contention that plaintiff was terminated just seven months short of when his pension benefits would

---

2. Plaintiff contends that he was dismissed on July 6, 1988, effective immediately. Affidavit of Ronald Lawford, sworn to on October 18, 1989 ("Lawford Aff."), ¶ 3. This contention is in contradiction with the documentary evidence be-

fore the Court. It is clear that plaintiff was informed in writing that his termination was not effective until July 15, 1988. *See* Lawford Aff., Exh. C.

have vested. Complaint ¶ 24. Defendants have now presented evidence that plaintiff's pension benefits have vested since his pension rights are affected by the liberal pension provisions of Canadian law. *See* Reply Affidavit of George J. Tripp, sworn to on November 9, 1989.[3] Prior to the filing of defendants' reply papers in support of the instant motion, plaintiff had never been informed that his pension rights had survived his termination. Plaintiff asserts that even if his pension benefits have vested, his termination still resulted in a substantial pension savings to defendants, in violation of ERISA.[4] It is not clear from the record whether, and to what extent, the scope of those pension rights was affected by plaintiff's termination.

Plaintiff further asserts that defendants terminated him with the additional intent of avoiding paying commissions that would have been due and owing to Lawford for the calendar year 1988. This alleged decision to terminate in avoidance of contractual commission payments is, plaintiff contends, a breach of the covenant of good faith and fair dealing in the employment and compensation agreements between the parties. Plaintiff further maintains that defendants, by their actions, have inflicted emotional distress on him, interfered with plaintiff's legitimate contractual relations, and have harmed his ability to gain future satisfactory employment.

Defendants' instant motion attacks plaintiff's complaint on six grounds. First, defendants contend plaintiff's ERISA claim should be dismissed for failure to exhaust administrative remedies. Second, defendants claim the ERISA claims should be dismissed for failure to make out of *prima facie* case of improper motive in the termi-

nation. Third, defendants assert that compensatory and punitive damages are not available under § 510 of ERISA. Fourth, defendants allege that this Court lacks jurisdiction over the claims against them. Fifth, defendants assert that plaintiff's common law causes of action should be dismissed for failure to state a claim. Sixth, defendants maintain that this action should be dismissed for *forum non conveniens*. Finally, defendants request that if any or all of plaintiff's claims survive the instant action, that plaintiff be required to post a bond for costs pursuant to Local Civil Rule 39.

## DISCUSSION

### A) Standards

The majority of defendants' motion is brought pursuant to Fed.R.Civ.P. 12. A portion of the motion is brought as a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

#### 1) Motion to Dismiss

"Dismissal of a complaint for failure to state a claim is a 'drastic step.' " *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985) (citations omitted). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (citations omitted). Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,*

---

3. This was not defendants' original position on the vesting of plaintiff's pension rights. In its moving papers, defendants accepted plaintiff's allegation that the vesting of his pension rights had been prevented by his termination, but asserted that those rights would have vested had plaintiff accepted either of the severance plans offered to him. However, defendants, in their reply papers, now assert that further review of plaintiff's pension rights indicate that the rights have vested.

4. Defendants argue that plaintiff's complaint alleges ERISA violations only against New York Life, and not against NYLCAN. The Court does not agree with this conclusion. On a motion for dismissal or summary judgment, the Court must read the pleading of the nonmoving party in the light most favorable to that party. In the instant case, plaintiff has stated his ERISA claim against "the defendants." Complaint ¶¶ 21, 24. The only possible reading of this allegation is that plaintiff has pled his ERISA claims against both New York Life and NYLCAN.

416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must accept plaintiff's allegations of fact as true together with such reasonable inferences as may be drawn in his favor. *Murray v. Milford*, 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686.

### 2) Motion for Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " 'Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.' " *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 10 (2d Cir.1989), *quoting Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.),

*cert. denied sub nom. Thomas J. Lipton, Inc. v. R.C. Bigelow, Inc.*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra*, 477 U.S. at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "must set forth facts showing that there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (citations omitted).

### B) Exhaustion of Administrative Remedies Under ERISA

Defendants assert that plaintiff failed to exhaust the administrative remedies available to him under his pension plan that would have allowed for determination and adjudication of his pension rights and might have made the instant action unnecessary or moot. It is uncontested that plaintiff has never made any claim against his pension plan for the benefits sought in this action. Plaintiff also does not contest that such administrative procedures were available under the plan.

There is a substantial disagreement among the Circuits regarding the need for exhaustion of administrative remedies before an ERISA action may be heard by a

federal court. The Seventh Circuit has held that "application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court." *Kross v. Western Electric Co.*, 701 F.2d 1238, 1244 (7th Cir.1983). "[T]he well-established federal policy, and supporting case law, favor[ ] exhaustion of administrative remedies prior to bringing an ERISA-based lawsuit in federal court." *Id.* at 1245. The Eleventh Circuit has agreed with the position of the Seventh Circuit. *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986).

The Third and Ninth Circuits, however, have not followed the holding in *Kross*. In *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir.1984), the Court found that a plaintiff suing under § 510 of ERISA need not exhaust his grievance or arbitration procedures prior to bringing a federal court action. In *Zipf v. American Telephone & Telegraph Co.*, 799 F.2d 889 (3rd Cir.1986), the Third Circuit explicitly rejected the Seventh Circuit's position in *Kross*. In *Zipf*, the Court was faced with a situation similar to the one before this Court. The plaintiff alleged that she was dismissed in order to avoid paying her disability benefits. There were internal administrative procedures available to the plaintiff under the defendant's disability plan, but the plaintiff failed to avail herself of them prior to filing suit. In reviewing the issue of exhaustion of remedies in ERISA actions, the Third Circuit stated that

> [W]e find no indication in the Act or its legislative history that Congress intended to condition a plaintiff's ability to redress a statutory violation in federal court upon the exhaustion of internal remedies. The provision [in the ERISA statute] relating to internal claims and appeals procedures, Section 503, refers only to procedures regarding claims for *benefits*. There is no suggestion that Congress meant for these internal remedial procedures to embrace Section 510 claims based on violations of ERISA's substantive guarantees. On the con-

trary, the legislative history suggests that the remedy for Section 510 discrimination was intended to be provided by the courts. Indeed, an amendment that would have created an administrative remedy for Section 510 claims, to be established by the Department of Labor, was defeated.

799 F.2d at 891–92 (citations omitted) (emphasis in original).

The Second Circuit has not reached the question of exhaustion of administrative remedies in ERISA actions brought under § 510. In at least one recent case, the Court cited *Kross* for the proposition that a plaintiff was required to exhaust administrative remedies prior to bringing an ERISA claim. *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989). However, that action was a claim for benefits owing, not for wrongful termination under § 510. Some insight into the Second Circuit's position on exhaustion is provided by the Court's decision in *Bird v. Shearson Lehman/American Express, Inc.*, 871 F.2d 292 (2d Cir.), *vacated for reconsideration*, — U.S. —, 110 S.Ct. 225, 107 L.Ed.2d 177 (1989). In *Bird*, the Court found that compulsory arbitration of statutory ERISA claims was improper. "Federal court access for pension claimants and beneficiaries was explicitly included as a key ingredient of [ERISA]. That Congress envisioned the federal courts as the central forum for enforcement of the statute is the inescapable conclusion from the plain meaning of the wording of ERISA." *Id.* at 297.

■ This Court believes that the Third Circuit's detailed analysis of the legislative history of § 510 is compelling. There is no evidence in any of the cases supporting an exhaustion requirement that Congress explicitly intended that claimants alleging wrongful termination should be required to avail themselves of the internal procedures of the entity which allegedly discriminated against them. Thus, the Court finds that exhaustion of administrative remedies is not a prerequisite for maintaining a claim

under § 510.[5]

## C) Improper Motive Under Section 510

■ Defendants assert that plaintiff's ERISA claim must be dismissed for failure to make out a *prima facie* case of improper motive on the part of defendants.[6] In *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir.1988), the Second Circuit addressed the burdens placed on a plaintiff wishing to maintain a § 510 action. The Court explained, "ERISA does not guarantee every employee a job until he or she has fully vested into a company benefit plan. Plaintiff is required to prove more than the single fact that his termination precluded him from vesting into the [ ] plan; he must demonstrate [defendant's] unlawful purpose in firing him." 859 F.2d at 1111. However, where intent or state of mind is in issue, "summary judgment should be used sparingly." *Id.* at 1114; *see Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam). Summary judgment is only appropriate under these circumstances where a plaintiff has failed to make a showing of wrongful intent on the part of defendant sufficient for a reasonable jury to find for plaintiff on that issue.

■ In *Dister*, the Court adopted for § 510 the proof requirements previously described for Title VII and actions under the Age Discrimination in Employment Act cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* set up a three step analysis for determining whether there has been an adequate show-

ing of intent. First, plaintiff must make a *prima facie* showing of wrongful intent. Second, if such a showing is made, defendants bear the burden of articulating some legitimate, non-discriminatory reason for plaintiff's termination. Third, if defendant meets that burden, plaintiff must present evidence showing that defendants' allegedly legitimate reasons for termination were not the true reasons. *See McDonnell Douglas, supra,* 411 U.S. at 802–05, 93 S.Ct. at 1824–26; *Dister, supra,* 859 F.2d at 1111. The Court's role on a summary judgment motion, when faced with this standard, is not to weigh the evidence to see if the parties have met their ultimate burdens, but to determine if there is a genuine issue of material fact that would permit the nonmoving party to convince a jury that it has met the applicable standard.

■ In the instant case, the Court finds that plaintiff has presented genuine issues of material fact which, on the current record, prevent the entry of summary judgment on plaintiff's ERISA claims. Plaintiff makes out a *prima facie* case of wrongful dismissal. He was terminated within seven months of what he and the defendants at that time thought was the official vesting period for his pension rights. Plaintiff was never informed by letter of the status of those rights in relation to any severance package that was offered to him, and the status of those rights is not completely certain on the current record. It appears that plaintiff has still not been provided with an official no-

---

**5.** Even if the Court were to follow the teaching of *Kross,* the Court would not dismiss plaintiff's action at this time. There is evidence before the Court, not successfully countered by defendants, indicating that plaintiff was not aware at the time of his termination of the availability of administrative remedies. Lawford Aff., ¶ 9. That apparent lack of notification raises serious due process questions which would affect any requirement for administrative exhaustion. *Cf. Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990) (requiring exhaustion of administrative remedies in ERISA action inappropriate where such remedies would be futile or inadequate). Thus, the Court would be constrained to exercise the discretion available under the *Kross* formulation

and would deny dismissal on the current record.

**6.** It is unclear from defendants' papers whether defendants wish the Court to treat this portion of their motion as one to dismiss or one for summary judgment. Plaintiff, however, clearly addresses the motion as one for summary judgment. *See* Plaintiff's Memorandum of Law at 18. The Court, in light of the non-pleading material submitted on this issue, chooses to follow the lead of plaintiff, and will treat this portion of the motion under the summary judgment standard. There is no indication that defendants will be prejudiced by this treatment.

tice of the vesting of his rights, and it is not clear whether his termination affected the scope of those rights.[7] Further, plaintiff presents evidence that defendants were engaged in an effort to reduce substantially the costs of its operation, which might indicate an intent to reduce pension costs.

Defendants do provide substantial evidence of a nondiscriminatory motive for plaintiff's termination. It is uncontroverted that the performance of the Saskatoon office declined while plaintiff was General Manager. Defendants further present evidence in their reply papers that plaintiff's pension benefits have vested. Standing alone, this evidence would be compelling. However, plaintiff has presented evidence of defendants' cost-cutting efforts, and has also indicated that he was never informed either that severance plans would have allowed his pension rights to vest, or that his rights had in fact vested. While the Court takes no position at this time on the ultimate success of the parties' positions, there are currently genuine issues of material fact raised by plaintiff regarding defendants' motive. Plaintiff has done more than simply allege wrongful termination. Thus, defendants' motion for summary judgment on plaintiff's ERISA claims must be denied at this time.

D) Compensatory and Punitive Damages Under ERISA

Defendants assert that punitive and compensatory damages are unavailable under § 510. Once again, the Second Circuit has not yet addressed this difficult issue under ERISA. As plaintiff points out, there has been at least one case in this District, however, that has addressed this issue and found that extracontractual damages are available in certain ERISA actions. *Schoenholtz v. Doniger*, 657 F.Supp. 899 (S.D. N.Y.1987) (Cooper, J.). However, *Schoenholtz* has little bearing on the instant action. That case involved the narrow question of whether punitive damages are available under § 409(a) of ERISA with respect to a fiduciary who breaches his duty to a plan, as opposed to an individual. The narrowness of Judge Cooper's holding is obvious when viewed in the light of *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), where the Supreme Court squarely held that an individual beneficiary—as opposed to a plan—*cannot* recover punitive damages under § 409(a). Thus, the Court finds that *Schoenholtz* does not control the issue at hand.

■ A number of other Circuit Courts have addressed the availability of punitive damages under ERISA. The overall tenor of those decisions is clear: extracontractual damages, including punitive and compensatory are not available in ERISA claims. In *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.1988), the district court had found that the employer had violated § 510, but had held that extracontractual damages were unavailable under § 502, the enforcement provision for § 510 claims. The Eleventh Circuit upheld the finding of the district court, noting that "the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits have all held that [§ 502(a)(3) ] does not authorize the recovery of punitive or extra-contractual damages." 838 F.2d at 1174. Since the Eleventh Circuit's decision in *Bishop*, at least three more Circuits have ruled that punitive damages are unavailable in ERISA action. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 n. 2 (3rd Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 888 n. 2 (10th Cir. 1988). Plaintiff cites no case law at the Circuit or Supreme Court level which contradict this overwhelming sweep of authority. Accordingly, the Court finds that punitive and other extracontractual damages are unavailable under ERISA claims. Any

---

7. Defendants have presented no support for their position that plaintiff may not maintain a § 510 claim if his pension rights have vested. Under certain circumstances, it may be possible to maintain such an action, even after vesting, if the rights at issue have been affected by the allegedly wrongful termination. Obviously, if plaintiff can provide no evidence of an impact on his pension rights arising from his termination, his § 510 claim should be dismissed.

demands by plaintiff for extracontractual damages under ERISA are hereby dismissed.

**E) Jurisdiction Over Defendants**

 Defendants challenge the personal jurisdiction of the Court over them on a number of grounds.[8] Defendants first allege that the Court had no jurisdiction over defendant NYLCAN because plaintiff failed to serve NYLCAN in a legally sufficient manner either under Fed.R.Civ.P. 4 or New York law. Plaintiff does not contest that he has not complied with Rule 4, but does contend that service was proper under New York law. N.Y.Bus.Corp.Law § 307 sets out the method for serving a foreign corporation not authorized to do business in the State of New York. Section 307 states that an unauthorized foreign corporation, otherwise subject to the jurisdiction of the Court, may be served by serving a copy of the summons and complaint on the New York State Secretary of State as the agent of the corporation, and by mailing a copy of those same documents to the foreign corporation. *See* N.Y.Bus.Corp.Law § 307; *Polo Fashions, Inc. v. B. Bowman & Co.*, 102 F.R.D. 905, 909 (S.D.N.Y.1984). The statute requires strict compliance with its provisions. "[The] statute is clear, unambiguous and must be strictly complied with 'since notice received by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court.'" *Meyer v. Volkswagen of America, Inc.*, 92 A.D.2d 488, 489, 459 N.Y.S.2d 82, 83 (1st Dep't 1983), *quoting Feinstein v. Bergner*, 48 N.Y.2d 234, 241, 422 N.Y.S.2d 356, 359–60, 397 N.E.2d 1161, 1164–65 (1979).

 It is clear from the record before the Court that plaintiff failed to comply with the explicit terms of the statute. Plaintiff served the summons and complaint on the New York State Superintendent of Insurance, not the Secretary of State, as required by the statute. Lawford Aff., Exh. R. Such service on the Superintendent of Insurance is not in strict compliance with N.Y.Bus.Corp.Law § 307. Further, the notice of service to NYLCAN from the New York State Insurance Department indicates that that notice is sent in compliance with N.Y.Ins.Law § 1213, not N.Y.Bus.Corp.Law § 307. Use of Insurance Law § 1213 is improper in the instant action as it provides for service only in actions on an insurance contract. Accordingly, plaintiff has failed to complete adequate service on defendant NYLCAN, and this Court does not have jurisdiction over NYLCAN. All claims against NYLCAN must be dismissed for lack of personal jurisdiction.

Defendants contend that, even if the form of service to NYLCAN had been proper, this Court could not have personal jurisdiction over NYLCAN because there is no basis in New York law for such jurisdiction. N.Y.Bus.Corp.Law § 307 requires that there be an independent basis for jurisdiction over the corporation to be served. In his responsive papers, plaintiff indicates two grounds for jurisdiction over NYLCAN. First, plaintiff argues that jurisdiction can be had over NYLCAN under N.Y. Civ.Prac. L. & R. ("CPLR") 301, which provides for jurisdiction over corporations doing business in New York State. Second, plaintiff asserts that jurisdiction is proper under CPLR 302(a)(2), which permits longarm jurisdiction over a foreign defendant who personally, or through an agent, commits a tortious act within New York State.

 "[CPLR] 301 has been authoritatively construed to authorize the exercise of jurisdiction over a foreign corporation if the defendant 'does business' in New York in the *traditional* sense.' The latter phrase has been consistently interpreted to mean that section 301 applies only when

---

**8.** Some of defendants' jurisdictional challenges assumed that the Court would dismiss plaintiff's ERISA claim. In particular, defendants asserted that if the ERISA claim were dismissed, the basis for federal court jurisdiction in this matter would be destroyed, as complete diversity does not exist. However, since the Court did not dismiss the ERISA claim, the Court need not address the issue of the appropriateness of the Court's jurisdiction over plaintiff's pendent state law claims.

the defendant is 'engaged in such a continuous and systematic course of "doing business" [in New York] as to warrant a finding of its "presence" ' in the jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.1990), *quoting Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y. S.2d 41, 43, 227 N.E.2d 851, 852 (emphasis in original), *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Plaintiff contends that NYLCAN's identity is merged with that of New York Life, and thus NYLCAN should be considered to be doing business in New York State in the same manner as New York Life.[9]

■ The Court has reviewed plaintiff's arguments under CPLR 301, and finds that jurisdiction cannot be had under that section. It is uncontested that NYLCAN itself cannot be considered to be doing business in New York State. NYLCAN does not have an agent in New York State, nor does it solicit business in New York State in any way. Plaintiff argues, however, that jurisdiction can be had over NYLCAN due to its relationship with New York Life. It is true that, under New York law, the actions of a subsidiary within New York State can act to confer jurisdiction on a foreign corporate parent. *See Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir.1989); *Kossoff v. Samsung Co.*, 123 Misc.2d 177, 184, 474 N.Y.S.2d 180, 186 (Sup.Ct.1984). However, in the instant situation, the foreign corporation is the subsidiary, not the parent.

■ It is true that jurisdiction can be had over a foreign subsidiary when that subsidiary's identity is merged with that of the New York parent. *See DCA Food Industries Inc. v. Hawthorn Mellody, Inc.*, 470 F.Supp. 574, 583 (S.D.N.Y.1979). However, jurisdiction is considered proper only if the parent's control of the subsidiary is "so complete that the subsidiary is, in fact, merely a department of the parent." *Dela-*

*gi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 433, 328 N.Y.S.2d 653, 657, 278 N.E.2d 895, 897 (1972). In the instant case, while there is some interchange of personnel between New York Life and NYLCAN, there is not sufficient intertwining to have NYLCAN defined as a "mere department" of New York Life. NYLCAN is separately incorporated, Plaintiff's Exh. H, and independently issues insurance contracts in Canada. NYLCAN's actions in Canada are generally separate from those of New York Life's own Canadian operations. If New York Life did not have its own Canadian operations, and operated in Canada solely through NYLCAN, plaintiff's argument for jurisdiction under CPLR 301 would have more force. However, plaintiff's own documentary evidence indicates that NYLCAN is generally a separate corporate entity which does business solely in Canada on a basis which makes it other than a mere department of New York Life.

■ Plaintiff also asserts that jurisdiction is proper under CPLR 302(a)(2).[10] Plaintiff's argument is based on the actions of Donald Harvey ("Harvey"), an officer of both New York Life and of NYLCAN, who was the official who informed plaintiff of his termination and later negotiated with plaintiff regarding his severance package. Plaintiff alleges that Harvey was acting in his official capacity with NYLCAN when he terminated plaintiff and spoke with plaintiff regarding severance. This is not a reasonable interpretation of the evidence before the Court. Plaintiff was an employee of New York Life, not NYLCAN. Plaintiff's Memorandum of Law at 8. In acting in relation to plaintiff as a New York Life employee, Harvey could only have been acting in his capacity as an officer of New York Life, not in his capacity with NYLCAN. This conclusion is borne out by the correspondence between the parties. Harvey's letters to plaintiff were written on

---

**9.** It is uncontroverted that New York Life is doing business in New York State.

**10.** CPLR 302(a)(2) provides:
(a) As to a cause of action arising from any of the acts enumerated in this section, a court

may exercise personal jurisdiction over a nondomiciliary ... who in person or through an agent: 2) commits a tortious act within the state. . . .

New York Life stationary, not NYLCAN stationary. Lawford Aff., Exhs. B, C. Further, plaintiff's correspondence to Harvey was addressed to him as a officer of New York Life, and makes no reference to NYLCAN. Lawford Aff., Exh. D. Plaintiff provides no evidence that Harvey ever acted in his capacity as a NYLCAN officer when dealing with plaintiff. Accordingly, plaintiff has not shown that jurisdiction would be proper under CPLR 301 or 302(a)(2), and thus service cannot be accomplished under N.Y. Bus. Corp. law § 307.[11]

### F) Viability of Common Law Claims [12]

Defendants challenge the viability of plaintiff's state law claims. First, defendants assert that, to the extent that plaintiff's common law claims are based on defendants' alleged interference with plaintiff's pension rights, those claims are preempted by ERISA. Defendants contend that the remaining common law claims are unsustainable as a matter of law.

Section 514(a) of ERISA[13] provides that if a state law "relate[s] to ... employee benefit plan[s]" it is pre-empted. "[T]he express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), *quoting Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). The Second Circuit has held that ERISA "'preempt[s] all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA.'" *Howard*

*v. Gleason Corp.*, 901 F.2d 1154, 1157 (2d Cir.1990), *quoting General Electric Co. v. New York State Dep't of Labor*, 891 F.2d 25, 29 (2d Cir.1989) (citations omitted). In *Dedeaux*, the Supreme Court explicitly applied ERISA preemption to state common law claims as well as to state statutory claims.

The preemption provisions of § 514(a) are also applicable to claims brought under § 510. Thus, any claim relating to wrongful discharge in order to avoid pension liability, which would be a violation of § 510, is preempted by ERISA. *See Baker v. Kaiser Aluminum & Chem. Corp.*, 608 F.Supp. 1315, 1318 (N.D.Cal. 1984). Indeed, under the broad sweep of § 514(a), to the extent that any of plaintiff's common law claims are allege wrongful discharge to deny plaintiff pension benefits, those claims are dismissed as preempted.

Defendants further contend that plaintiff's common law claims, to the extent they survive the preemption provisions of ERISA, are insufficient as a matter of law. Defendants correctly indicate that New York State courts do not recognize a cause of action under the implied covenant of good faith for wrongful dismissal of an at-will employee. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 297, 461 N.Y.S.2d 232, 233, 448 N.E.2d 86, 87 (1983). The New York courts have made no explicit exceptions to this rule. "It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will,

11. Since there is no personal jurisdiction over NYLCAN, the Court need not reach defendants' allegations regarding the availability of subject matter jurisdiction over NYLCAN.

12. Plaintiff has challenged defendants' request to have this portion of their motion considered as one for summary judgment. The Court notes that defendants did identify this portion of their motion as being one for summary judgment in their moving papers. If plaintiff believed that he would be unable to respond adequately to that motion, Rule 56(f) provides nonmoving parties with a mechanism to stay the motion while necessary discovery is conducted. *See*

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989). Plaintiff has not filed a Rule 56(f) motion in conjunction with this motion. And, in light of the availability of relief under Rule 56(f), his unsupported objection to the form of defendants' motion is not well taken. However, the Court has not found it necessary to look outside the pleadings in deciding this portion of the motion, except to the extent already accomplished in reviewing plaintiff's ERISA claim. *See* Section (C), *supra*.

13. 29 U.S.C. § 1144(a).

terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (1987). In the instant case, the parties explicitly contracted that plaintiff's employment would be at will. Plaintiff's Exh. K. The only time an employee may maintain a wrongful termination claim is when the employee has an oral or written contract for a definite term. *See Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 188, 538 N.Y.S.2d 771, 773, 535 N.E.2d 1311, 1313 (1989). Here plaintiff had no oral or written contract for a definite term. The written employment contract between plaintiff and New York Life expressly provided that he could be terminated with or without cause. Thus, plaintiff may not recover for his termination *per se.* Accordingly, to the extent that plaintiff's claim of wrongful termination is based solely on his employment contract, that claim must be dismissed.

■ Plaintiff asserts that New York law does permit recovery for wrongful termination of an employee to avoid payment of commissions. In *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (2d Cir.1985), the Second Circuit indicated that a "contract for payment of commissions creates rights distinct from the employment relation, and, ... obligations derived from the covenant of good faith implicit in the commission may survive the termination of the employment relationship." 769 F.2d at 112. However, even a claim for wrongful termination to avoid commissions cannot be maintained if the employee was terminated for reasons other than to avoid payment of those commissions. *Id.* at 113. In the instant case, though, the Court has already found that the plaintiff has made a sufficient showing of improper motive to avoid summary judgment on the ERISA claim. Similarly, plaintiff has made an adequate showing of improper motive to allow his claim of wrongful termination to avoid commissions. Defendants assert that plaintiff's *Wakefield* claim cannot be maintained because at the time of his dismissal

his rights to commissions were uncertain. However, defendants have not shown that plaintiff was, in fact, not eligible for any unpaid commissions at the time of his termination. Defendants have only indicated that plaintiff was not assured commissions under his contract. This is not enough to avoid plaintiff's claims, and thus plaintiff's *Wakefield* claim will not be dismissed at this time.

■ Defendants also challenge plaintiff's claims for damages for infliction of emotional distress. To the extent that those claims are based on defendants' failure to pay him commissions allegedly due and owing, they cannot survive. "Emotional and mental distress is generally not compensable in a breach of contract action." *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir.1985). In *Marcella*, the plaintiff alleged that the defendants failed to pay him commissions. "It was the refusal to make payment that caused [the plaintiff's] emotional distress. This is simply not compensable." *Id.*[14]

■ To the extent that plaintiff alleges an independent cause of action for tortious infliction of emotional distress, it too must fail. New York law only recognizes a claim for intentional infliction of emotional distress for conduct that exceeds all bounds of decency. *Kaminski v. United Parcel Service*, 120 A.D.2d 409, 412, 501 N.Y.S.2d 871, 873 (1st Dep't 1986); *see Martin v. Citibank N.A.*, 762 F.2d 212, 220 (2d Cir.1985). The New York Court of Appeals has adopted the standard laid out in the Restatement of Torts, Second. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable to society." Restatement of Torts, Second, § 46, comment d; *see Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978). In *Kaminski, supra*, where the Court found

---

**14.** As has been previously discussed, to the extent that plaintiff alleges emotional distress arising from his termination to avoid pension bene-

fits in violation of § 510 of ERISA, those claims are preempted by § 514(a). *See* discussion, *supra*.

that a sufficient showing had been made to maintain an emotional distress claim, the plaintiff employee had been wrongly accused of a theft, had been physically confined by his accusers, and threatened with arrest and prosecution unless he admitted the theft, returned the money, resigned his position, and waived his rights to benefits.

■ In the instant case, plaintiff's accusations, taken as true, do not rise nearly to the level of the actions in *Kaminski*. The holding in *Murphy, supra*, is instructive in reviewing plaintiff's claims. In *Murphy*, the plaintiff alleged that he was fired because he disclosed certain improprieties to top management, and because of his age. The Court dismissed plaintiff's emotional distress claim arising out of his termination, holding that it did not rise to the level of outrageousness required to maintain such a cause of action. "[I]n light of our holding [ ] that there is now no cause of action in tort for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress." *Murphy, supra*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90.

Nothing in plaintiff's pleading rises to the level of outrageousness required to maintain an action for infliction of emotional distress. Thus, plaintiff's claim for tortious infliction of emotional distress must be dismissed.[15]

**G) Forum Non Conveniens**

■ Defendants finally assert that this case should be dismissed under the doctrine of *forum non conveniens*. A motion to dismiss on *forum non conveniens* grounds rests in the sound discretion of the Court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 237, 102 S.Ct. 252, 256, 70 L.Ed.2d 419 (1981); *Farmanfarmaian v. Gulf Oil*

*Corp.*, 588 F.2d 880 (2d Cir.1978). Since the enactment of 28 U.S.C. § 1404(a), the courts have universally held that if the forum is found to be inconvenient, the remedy is transfer and not dismissal. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *Collins v. American Automobile Insurance Co.*, 230 F.2d 416 (2d Cir.1956). However, if the more convenient forum is a court to which transfer cannot be made, for instance a foreign court as in the case at bar, the suit can be dismissed on *forum non conveniens* grounds. *See, e.g., Piper, supra*.

District courts are to review motions for *forum non conveniens* on a case by case basis. Consequently, the courts have refused to identify specific circumstances which would require either grant or denial of the remedy. No "rigid rule [has been laid out] to govern discretion, and [ ] '[e]ach case turns on its facts.' " *Piper, supra*, 454 U.S. at 249, 102 S.Ct. at 262, *quoting Williams v. Green Bay & Western R. Co.*, 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1946). "If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." *Piper, supra*, 454 U.S. at 250, 102 S.Ct. at 263.

In general, " 'a plaintiff's choice of forum should rarely be disturbed and the burden is on the defendant to establish that the action should be dismissed on the ground of forum non conveniens.' " *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir.1987) (per curiam) (citation omitted). However, where "the plaintiffs [are] not residents of the United States but of a foreign country, their choice of the United States as a forum [will] not be given the deference to which it would be entitled if this country were their home." *In Re Union Carbide Corporation Gas Plant Disaster at Bhopal*, 809 F.2d 195, 198 (2d Cir.1987), *cert. denied sub nom. Executive Committee Members v. Union of India*,

---

**15.** Defendants also challenge the viability of plaintiff's claim for tortious interference with contract. That claim is brought solely against NYLCAN. Complaint ¶ 41. As this Court does not have personal jurisdiction over NYLCAN, *see* discussion, *supra*, that claim must be dismissed on that jurisdictional ground. Accordingly, the Court need not reach defendants' substantive objections to that claim.

484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987); *see Piper, supra,* 454 U.S. at 255–56, 102 S.Ct. at 265–266; *Transunion, supra,* 811 F.2d at 129.

Defendants are correct that the focus of this litigation appears to be closer to Canada than to New York. Plaintiff's entire employment was in Canada. There is no evidence that he ever came to New York in connection with his employment, or that he ever had substantial contact with the New York headquarters of New York Life in the course of his employment. Additionally, since plaintiff's performance as General Manager will be in issue, many of the witnesses will be located in Canada. However, defendant New York Life is headquartered in New York, it is likely that plaintiff's employment contract was approved in New York, and plaintiff is likely to wish to depose witnesses in New York who might have knowledge related to plaintiff's allegation of a corporate policy to reduce costs of the Canadian operations. Additionally, the Court notes that plaintiff's ERISA claim would be lost if plaintiff were required to bring his action in Canada. Thus, particularly in light of the dismissal of most of plaintiff's common law claims against NYLCAN and of plaintiff's common law claims, the Court cannot find that Canada is a substantially more appropriate forum in this action. Accordingly, defendants' motion to dismiss for *forum non conveniens* is denied.

H) Security for Costs

Defendants have moved for an order requiring plaintiff to post a $25,000 bond as security for costs pursuant to Local Civil Rule 39. Rule 39 states, "The court … may order any party to file an original bond for costs … in such amount and so conditioned as it may designate." Defendants contend that a bond is essential here due to the costs that will be incurred because of the need to conduct discovery in Canada. Plaintiff does not contest defendants' request for a bond, but maintains that a nominal bond of $1,000 will be sufficient.

The Court agrees with defendants that more than a nominal bond is appropriate and that, were defendants required to respond to plaintiff's original complaint in its entirety, a substantial bond would be appropriate. The instant motion, however, has resulted in a significant narrowing of the issues in dispute and the amount in controversy. Accordingly, a bond as large as that requested by defendants appears unnecessary at this time. The Court believes that a $15,000 bond should provide sufficient protection of defendants' interests. Thus, plaintiff is ordered to post a bond in the amount of $15,000 as security for defendants' costs, in compliance with Local Civil Rule 39.

## CONCLUSION

Defendants' motion to dismiss and for summary judgment is granted in part and denied in part. All claims against defendant NYLCAN are dismissed for lack of personal jurisdiction. Plaintiff's demand for extracontractual damages on his ERISA claim is dismissed. Plaintiff's common law claims to the extent they allege termination to avoid pension benefits are dismissed as preempted by ERISA. Plaintiff's claim for infliction of emotional distress is dismissed as a matter of law. Plaintiff's ERISA claim and his claim for wrongful termination in order to avoid commissions are not dismissed.

Plaintiff shall file an amended complaint in compliance with this opinion and order within forty-five (45) days of this order. Plaintiff shall also contact the Court within thirty (30) days to set a date convenient to the parties and to the Court for a pre-trial conference in this matter.

Plaintiff shall post a bond in the amount of $15,000 pursuant to Local Civil Rule 39 within forty-five (45) days of this order.

SO ORDERED.