**Robert DAILEY and Reggie Leach, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs,**

v.

**The NATIONAL HOCKEY LEAGUE, et al., Defendants.**

Civ. No. 91–2564.

United States District Court, D. New Jersey.

Dec. 30, 1991.

---

J. Philip Kirchner, Kenney & Kearney, Cherry Hill, N.J., Edwin T. Ferren, III, Richman & Ferren, David E. Ferguson, Haddonfield, N.J., for plaintiffs.

Stephen Orlofsky, Blank, Rome, Comisky & McCauley, Cherry Hill, N.J., for NHL defendants.

Claire Rocco, William T. Hangley, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, Pa., Stuart H. Thomsen, Sutherland Asbill & Brennan, Washington, D.C., for defendant the Manufacturers Life Ins. Co.

## OPINION

GERRY, Chief Judge.

Plaintiffs, two former professional hockey players, filed this class action lawsuit on June 6, 1991, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in connection with the funding, administration, and management of the National Hockey League Pension Plan and Trust. Defendants are the National Hockey League (NHL), the National Hockey League Pension Society, the Manufacturer's Life Insurance Company ("Manulife"), and numerous member clubs of the NHL.

All defendants have moved to dismiss on the grounds that another previously filed lawsuit addressing the same issues is now pending in Canada. Defendants cite three legal doctrines which they argue compel this court to relinquish jurisdiction over this action and leave the matter to be resolved by the Canadian court: 1) the *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939) doctrine, 2) the *forum non conveniens* doctrine, and 3) the *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) abstention doctrine. Plaintiffs argue that dismissal is inappropriate under all three doctrines, primarily because ERISA is subject to the exclusive jurisdiction of the United States District Courts.[1] For the reasons set forth below, defendants motions to dismiss are denied.

## I. PLAINTIFFS' CLAIMS

The NHL pension plan has been in existence since 1947, but in 1967 its terms and conditions were set down in a document called the National Hockey League Club Pension Plan and Trust Agreement (the "1967 Agreement") which designated the NHL Pension Society as trustee of the Pension Plan and Trust. Until 1986, the Pension Society invested substantially all of the funds under the plan in a group annuity contract with defendant Manulife. Under this contract, to the extent that Manulife was able to earn a rate of return on the funds deposited in excess of the internal rate of return on which the contract was based, "surplus funds" would be generated.

The 1967 agreement contained a provision directing that surplus funds generated by the plan were to be used solely for the benefit of participating players and were to be allocated to their accounts on a regular basis at five year intervals. It also contained several clauses stating that all funds and assets of the Pension Plan and Trust were to be used for the exclusive benefit of plan participants and their beneficiaries, as well as a clause prohibiting amendment of the agreement in any way that would vitiate or contradict the exclusive benefit provision. In accordance with this agreement, surplus funds existing as of April 30, 1967 were allocated to participating players.

---

**1.** 29 U.S.C. § 1132(e)(1) of ERISA states:
Except for actions under subsection (a)(1)(B) of this section [to recover benefits due under the plan, to enforce rights under the plan, or to clarify rights to future benefits under the plan], the district courts of the United States shall have exclusive jurisdiction of civil actions under this title....

In 1972 the agreement was amended and restated in the "First Restated Agreement," purporting to be effective retroactively to May 1, 1969. The exclusive benefit provisions and the prohibition on amendments remained unchanged from the 1967 Agreement. The only relevant changes made were the provision of two additional allocations of surplus funds from the Pension Plan and Trust to participants as of April 30, 1968 and April 30, 1969. These allocations were subsequently made in accordance with the amended agreement. In 1977 the agreement was amended again, but no relevant changes were made.

Although under the then existing Agreement as amended, additional allocations of surplus should have been made as of 1972 and 1977, no such allocations were made, despite the fact that substantial surplus funds were accruing in the fund at that time. In 1982 an agreement was reached between Manulife and the NHL Pension Society, whereby Manulife agreed to disgorge approximately $2,993,000.00 of surplus funds from the Pension Plan and Trust to the Pension Society. The Pension Society allocated approximately one million dollars of this surplus to the accounts of retired participants in the pension plan; but the remaining approximately $1,993,-000.00 was refunded to member clubs and the NHL and was removed altogether from the Pension Plan and Trust. No notice was given to participants of this diversion of plan assets to the benefit of the NHL and member clubs.

In 1983 yet another amendment was made, the "First Amendment to the Second Restated Agreement," which purported to be effective retroactively to January 1, 1982. Although this amendment did not alter the provisions of the agreement providing that all funds be used solely and exclusively for the benefit of plan participants and beneficiaries, it did provide that present and future surplus funds were to be allocated to the NHL and the member clubs as well as plan participants, each allocation to be made in proportion to the contributions made to the plan by that recipient. Plaintiffs contend that this provision and the 1982 diversion of funds violated the 1967 agreement and subsequent amendments in that it provided for the use of funds under the plan other than for the benefit of participants and their beneficiaries.

The next significant amendment was executed in 1987, the "Fourth Restated Agreement," purporting to be effective retroactively to July 1, 1986. This amendment effectively converted the Pension Plan and Trust from a defined benefit pension plan into a defined contribution pension plan. Thus, all benefits accruing to participants under the plan as of the effective date were to be in the form of defined contributions allocated specifically to individual accounts.

Around the same time, the Pension Society, the NHL, and the member clubs made an agreement with Manulife, whereby Manulife agreed to refund an additional twenty-four million dollars in surplus funds that had previously accrued in the Pension Plan and Trust, in exchange for the Pension Society's agreement to allow Manulife to convert the pension fund from a participating to a non-participating group contract such that surplus funds would no longer be generated under the plan. No notice of this agreement was given to plan participants, and of the twenty-four million dollars refunded to the Pension Society, less than four and a half million dollars were allocated to the accounts of retired participants of the plan. Approximately sixteen and a half million dollars were allocated to the accounts of member clubs. Plaintiffs claim that these actions violated various provisions of ERISA, specifically: §§ 404, 409, 29 U.S.C. §§ 1104, 1109, imposing fiduciary duties with respect to the management of pension funds; and § 403(c)(1), 29 U.S.C. § 1103(c)(1), prohibiting inurement of the assets of a plan to the benefit of an employer. Plaintiffs' complaint also includes state law breach of contract and breach of fiduciary duty claims.

Plaintiffs request the following relief: 1) an injunction prohibiting defendants from removing any more surplus funds from the pension plan and prohibiting defendants

from executing any further amendments that are inconsistent with the 1967 Agreement; 2) an order directing defendants to provide to plaintiffs an accounting of all surplus funds generated by the plan since its inception and directing that all such funds be returned to the plan and allocated to plaintiffs' accounts; 3) an order directing defendants to reconvert the contract with Manulife from a non-participating to a participating contract, to allocate all surplus funds earned by such contract in the future to plaintiffs' accounts, and directing Manulife to account to the pension fund for all income and/or surpluses generated by the fund since its conversion from a participating to a non-participating contract in 1986 and to return all such income and surplus funds to the pension fund; 4) an order removing the NHL Pension Society as trustee of the fund and appointing a new trustee or trustees; 5) an award of money damages for defendants' breach of contract and fiduciary duty, and 6) an award of attorneys fees under ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D).

## II. THE CANADIAN LAWSUIT

On April 26, 1991, before the filing of this suit, seven retired hockey players (not including the plaintiffs in this suit) filed a similar suit in the Ontario Court of Justice. The defendants in that suit are the same as in this suit except that the NHL is not named. That suit has been made, by stipulated order of the Ontario court, a "representative action"—analogous to our class action—with the plaintiff class consisting of all player participants with service under the pension plan on or before June 30, 1982 and their beneficiaries.[2] The plaintiffs' claims allege breach of contract and breach of fiduciary duty under Canadian common law.

Plaintiffs seek relief substantially similar to what is requested in the case before us, including: 1) an order directing that all surplus funds generated by the pension fund and withdrawn by defendants be returned to the fund and allocated among the

participating players and beneficiaries; 2) a declaration that the Pension Society and the NHL are in breach of their legal and fiduciary duties to the plan participants and beneficiaries; 3) a declaration that all amendments to the 1967 Agreement are null and void to the extent that they purport to allocate surplus funds to persons other than participating players and their beneficiaries; 4) an accounting of monies allocated or to be allocated among plan participants and beneficiaries; and 5) an order removing the NHL Pension Society as trustee and appointing a new trustee.

## III. THE PRINCESS LIDA DOCTRINE

■ The *Princess Lida* doctrine holds that where two suits filed in separate courts are *"in rem* or *quasi in rem,* so that the court … has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought," the court in which the suit was filed later must relinquish its jurisdiction and allow the case to proceed solely in the first court. *Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939). On the other hand, "where the judgment sought [in one court] is strictly *in personam,* both [courts], having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as *res judicata* in the other." *Princess Lida,* 305 U.S. at 466, 59 S.Ct. at 280.

■ Although *Princess Lida* involved concurrent actions in federal and state courts, the doctrine also applies where a suit has been previously filed in a foreign tribunal. *See Chelsey v. Union Carbide Corp.,* 927 F.2d 60, 66 (2d Cir.1991). Defendants, however, have not cited any cases in which the doctrine was applied to dismiss ERISA claims. Plaintiffs argue that *Princess Lida* should not apply here, first, because this is an ERISA action and Congress has explicitly made the United States federal courts' jurisdiction in ERISA

---

**2.** In contrast, plaintiffs in our suit seek to represent a class of all those who were participants and beneficiaries under the plan through December 31, 1987.

cases exclusive, and second, because neither court need exercise quasi in rem jurisdiction to adjudicate the claims advanced. We will address the second of these issues first.

### A. *Quasi in Rem Jurisdiction and the Danger of Conflicting Orders*

The *Princess Lida* doctrine arises out of a practical concern for avoiding situations in which two courts issue conflicting orders with respect to the same property. Clearly such conflict arises where both courts exercise *in rem* jurisdiction with respect to the same *res*. Similar conflicts may arise in cases in which the court's jurisdiction is not technically *in rem,* but where adjudication of the claims requires two courts to exert control over the same property. In such cases the courts' jurisdiction is said to be *quasi in rem.* The *Princess Lida* case itself involved *quasi in rem* jurisdiction over a trust fund, and the Court stated that "suits brought ... to administer trusts" were generally subject to the doctrine. *Id.* at 466, 59 S.Ct. at 280.

█ Certainly the instant actions do involve the administration of a trust. Yet the particular "suit brought to administer a trust" described in the *Princess Lida* opinion apparently required far more comprehensive control by the court over the administration of the trust than is sought in the cases at issue here. That suit was an accounting action filed by the trustee in which

> the court [had] the power to fix the compensation of the trustee, to require him to take over from the trust investments improperly made and to restore the amount expended for them to the trust estate, to surcharge him with losses incurred, to allow him his proper expenses, to find against him a balance due the estate, and to make the balance found due a lien upon his real estate.

*Id.* at 464, 59 S.Ct. at 279. In such a suit, every aspect of the administration of a trust was apparently supervised and overseen by the court. In contrast, here and in the Canadian action, plaintiffs seek court involvement only with respect to certain limited aspects of the administration of the trust, relating specifically to the diversion of surplus funds.

Clearly every suit that involves the administration of a trust fund does not invoke the *Princess Lida* doctrine. At least one district court has held that an ERISA case in which the diversion and misappropriation of pension funds were alleged, constituted an *in personam* suit and was thus not subject to the *Princess Lida* doctrine. *See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.,* 600 F.2d 671, 674 (7th Cir.1979) (quoting district court opinion). The Tenth Circuit also declined to apply *Princess Lida* to a federal (non-ERISA) suit involving the administration of a trust in *Southwestern Bank & Trust Co. of Oklahoma v. Metcalf State Bank,* 525 F.2d 140 (10th Cir.1975). There a federal suit was brought by bondholders against the trustee of a trust seeking damages for breach of fiduciary duty, and a state court action to liquidate the property subject to the trust had been previously filed. The Tenth Circuit found that the state court action was "clearly *in rem,*" *id.* at 142, but that the federal court action—which consisted of damages claims "relat[ing] entirely to the administration of the trust by the defendant trustee, and the performance of its obligations as trustee under the trust instruments," *id.*—was *in personam* and thus did not require the application of *Princess Lida.*

With respect to damages claims involving the administration of trusts, an important distinction can be made between situations where two concurrent lawsuits involve damages claims against the trust fund itself, and situations where one or both of the suits seek damages against third parties. Clearly in the first instance, conflict is likely to arise since both courts may seek to allocate funds from the same finite pool. Both courts will need to control the trust in order to adjudicate the claims before them, jurisdiction can thus be said to be *quasi in rem,* and *Princess Lida* applies. *See Levy v. Lewis,* 635 F.2d 960, 966 (2d Cir.1980). In the second instance,

however, where damages are not sought against the trust itself, the claims are simply in the nature of *in personam* damages claims, which are not subject to the *Princess Lida* doctrine. The two suits at issue here, to the extent they seek monetary relief, clearly fall into the second category. Rather than seeking to obtain a share of the funds in the trust itself, plaintiffs in both suits seek to force third parties (the member clubs and Manulife) to restore to the fund monies which they allegedly illegally removed therefrom.

■ To the extent that plaintiffs request injunctive relief relating to the future administration of the trust, the question of whether *Princess Lida* applies is somewhat more difficult. In *Southwestern Bank,* the Tenth Circuit explicitly limited its holding to damages claims, indicating that *Princess Lida* would have applied had the federal suit also sought injunctive relief, such as the removal of the trustee. *See Southwestern Bank,* 525 F.2d at 143. Despite this dicta from the Tenth Circuit, however, we are inclined to hold that plaintiffs' claims for injunctive relief do not mandate application of *Princess Lida* to this case. In reaching this conclusion, we look behind the abstract and malleable term, *"quasi in rem,"* to the practical purpose which the *Princess Lida* doctrine serves: the avoidance of conflicting and irreconcilable orders from different courts. Applying this pragmatic standard to the situation before us, we find that the danger of conflicting orders being issued by this court and the Canadian court has been substantially overstated by defendants.

The relief sought in these two lawsuits, though based partly on different legal theories, is admittedly quite similar. Both seek the removal and replacement of the trustee, and both seek an accounting of surplus funds generated by the fund. It is conceivable, therefore, that inconsistent obligations could be placed on the parties by the two courts if they were to act on these requests for relief simultaneously. The two courts might, for example, each order that the trustee be replaced by different entities.

Given the current posture of the two lawsuits, however, it seems virtually certain that a decision will be rendered in the Canadian action well before this court has reached a stage at which we could consider ordering relief. We will therefore have the benefit of knowing what relief has been ordered by the Canadian court and will be able to tailor our own order accordingly. To the extent that the Canadian court does order the relief requested by plaintiffs in that action, the concurrent requests for relief in this action will most likely be rendered moot. Thus, if the Canadian court removes and replaces the NHL Pension Society as trustee, plaintiffs' request that this court remove the Pension Society as trustee will certainly become moot. If the Canadian court orders an accounting of the surplus funds removed from the trust, the results of those calculations may well have preclusive effect in this action. Of course, to the extent the Canadian court declines to order the relief requested, no danger of conflicting orders will be present.

Certainly, when and if this court does reach the stage of considering whether to order the relief requested, defendants will be free to alert us to any dangers of conflict with any Canadian order that may exist, and advise us against ordering any relief that might impose conflicting obligations on the parties. The court would welcome such arguments at that time. At this stage in the litigation, however, the potential danger of conflicting judgments appears minimal.

## B.   *The Federal Courts' Exclusive Jurisdiction over ERISA*

The fact that plaintiffs bring claims under ERISA as to which the United States federal courts have exclusive jurisdiction, also weighs against application of the *Princess Lida* doctrine to this case. Although it appears that no court has addressed this exact issue previously, a few opinions offer some guidance.

The Second Circuit has held, in a case involving concurrent federal and state court actions, that the federal courts' exclusive jurisdiction over certain ERISA claims

precludes the dismissal of such claims by a federal court, despite the presence of factors that would otherwise weigh strongly in favor of dismissal under the *Princess Lida* and *Colorado River* doctrines. *See Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980).[3] Similarly, in *Central States Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671 (7th Cir.1979), where a federal ERISA action was proceeding simultaneously with a state court liquidation proceeding under the state insurance regulation laws, the Seventh Circuit held that while "[p]rotecting the integrity of state insurance insolvency proceedings, and concern for their freedom from outside interference, are of great importance [... the state law governing such proceedings] cannot be interpreted as precluding a party from pursuing a congressionally created federal claim in the only courts able to provide affirmative relief on that claim." *Id.* at 677.

■ Both of these courts based their reasoning on the fact that state courts are unable to hear ERISA claims, so that if the federal claims were dismissed, "the right[s] alleged would never be fully adjudicated." *Levy*, 635 F.2d at 967. Here, the prior-filed action is in a foreign tribunal rather than a state court, but it seems clear that it is equally impossible for the Canadian court to hear plaintiffs' ERISA claims as such. The language of the statute clearly states that only *United States* District Courts hear such claims,[4] and no attempt has been made to raise ERISA claims in the Canadian action.[5]

Defendants argue that even if the Canadian court cannot hear ERISA claims as such, dismissal of this suit will not prejudice the plaintiffs, since their ERISA claims are really no more than "garden variety" breach of contract and breach of fiduciary duty claims, which have been federalized by ERISA but are essentially identical to the common law claims brought in the Canadian action. While it may be true that certain provisions of ERISA restate common law principles, a leap from that

---

**3.** Indeed, *Levy* presented considerably stronger arguments for application of the *Princess Lida* doctrine than the instant case. It involved a federal ERISA action filed by former employees of an insurance company that was simultaneously undergoing liquidation proceedings in state court pursuant to state insurance laws. Thus, both actions involved claims brought against a single finite fund or pool of assets of an insolvent company. The case presently before us, in contrast, involves claims against solvent entities which are alleged to have wrongfully diverted money from a fund and are asked to return that money to the fund; it is more in the nature of a damages action.

Additionally, the *Levy* case involved factors strongly favoring abstention under the *Burford* and *Younger* doctrines, but the court considered its exclusive jurisdiction over ERISA claims an important enough consideration to preclude application of these doctrines as well.

**4.** Defendants argue that some of plaintiffs ERISA claims fall within the exception to the exclusive jurisdiction provision for claims brought under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to [a participant or beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and that therefore, since plaintiffs arguments regarding exclusive federal jurisdiction do not apply to these claims, they, at least, should be dismissed. Indeed, the *Levy* court

took this approach, retaining jurisdiction only over those ERISA claims as to which there was exclusive federal jurisdiction, while dismissing on *Princess Lida* grounds the claims as to which jurisdiction was concurrent. *See Levy*, 635 F.2d at 967.

First, we do not find it entirely clear from the language of the statute, which, if any, of the plaintiffs' ERISA claims fall within the exception cited by defendants. More importantly, however, we believe it is appropriate to treat this case as an indivisible whole with respect to the issues now before us. If, in fact, our jurisdiction over this case does present dangers of conflicting court orders warranting *Princess Lida* dismissal, dismissing only part of the case—whether it be certain of plaintiffs' ERISA claims or the pendent state law claims—will do little toward alleviating that problem. Similar considerations move us to consider the case as a whole with respect to the *forum non conveniens* doctrine as well.

**5.** Indeed, as plaintiffs point out, the order entered by the court in the Canadian action appointing the representatives of the plaintiff class explicitly limits their representation "to the subject matter of this proceeding and not any statutory claims which may be raised under the laws of any other jurisdiction." *Bathgate et al. v. The National Hockey League Pension Society*, No. RE 785/91, slip op. at 2 (Ontario Court of Justice, June 26, 1991).

observation to the conclusion that claims brought under ERISA in federal court are identical to and interchangeable with common law claims brought in state courts or foreign tribunals, is unwarranted. First, claims under ERISA are governed by a large body of federal case law that is entirely separate from the state or Canadian common law of contracts. Second, to accept such a conclusion requires us to assume that the United States Congress was wasting its time when it enacted these provisions of ERISA and when it enacted the provision giving exclusive jurisdiction to the federal courts; we are not willing to make such an assumption.

Defendants further argue that even though plaintiffs' ERISA claims cannot be formally raised before the Canadian court as such, in interpreting the Trust Agreement under common law principles, the Canadian court will be compelled to apply ERISA because of the way the agreement is worded. Specifically, they argue that ¶ 6.10 of the 1967 Agreement effectively incorporates the ERISA provision on which plaintiffs primarily rely, and mandates that the Agreement be interpreted consistently with that language. Thus, they argue, the Canadian court, in interpreting the Agreement under common law principles, will have to apply ERISA. Paragraph 6.10 reads as follows:

> The Club Pension Plan is for the exclusive benefit of employees of the Member Clubs and their beneficiaries, and shall be interpreted and administered to the full extent possible under the laws of Canada and the Provinces thereof, in a

manner consistent with the requirements of § 401(a) of the Internal Revenue Code of 1954 of the United States of America, as it may hereafter be amended, or of any provisions of any future Internal Revenue Code of similar scope and purpose.

Defendants contend that plaintiffs' ERISA claims are primarily based on the "exclusive benefit rule" contained in § 403 of ERISA. Therefore, since the agreement itself states that the Plan "is for the exclusive benefit of employees," defendants argue that it effectively incorporates § 403 of ERISA. Further, since the "exclusive benefit rule" is also contained in § 401(a) of the Internal Revenue Code, the Agreement's explicit statement that it must be interpreted "in a manner consistent with" § 401(a), is equivalent to stating that it must be interpreted in a manner consistent with § 403 of ERISA. Moreover, defendants point to the fact that ERISA operated to amend the Internal Revenue Code as additional support for their argument that the above clause effectively incorporates ERISA itself into the Agreement.

■ We find defendants' arguments unconvincing. The fact that two statutory provisions contain similar or even identical language does not mean that they are necessarily subject to the exact same interpretation.[6] Statutory interpretation is informed by a number of factors other than statutory language, such as the purpose and context of the legislation as well as its legislative history. Courts are also bound by the case law interpreting a statutory provision. Clearly, our reading of ERISA

---

6. Section 403 of ERISA and § 401(a) of the Internal Revenue Code, in fact, do not contain identical language. Section 403 of ERISA states in relevant part:

> Except as provided in paragraph ... the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1103(c)(1). Section 401(a), of the Internal Revenue Code, entitled "Requirements for Qualification," states a similar "exclusive benefit rule" only to the extent that it defines a "qualified trust," in part, as one in which

under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be ... used for, or diverted to, purposes other than for the exclusive benefit of the employees or their beneficiaries
...

26 U.S.C. § 401(a)(2). Apparently the reference in the plan Agreement to § 401(a) of the Internal Revenue Code indicates an intent that the NHL plan be administered as a "qualified trust," and as such, it is subject to the "exclusive benefit rule" of the Internal Revenue Code.

is informed by a different set of case law than our reading of the Internal Revenue Code. Similarly, the fact that the 1967 Agreement itself contains language similar to the exclusive benefit rule in ERISA does not mean that a Canadian court would be bound by the substantial body of United States federal case law governing ERISA. Finally, that portion of ERISA that operated to amend the Internal Revenue Code, Title II, is distinct and separate from the portion of ERISA on which plaintiffs rely here, Title I. The amendments to the Internal Revenue Code effected by Title II of ERISA are strictly tax provisions, which bear on such issues as the deductibility of contributions and taxation of benefits; they have nothing to do with the fiduciary duty rules of Title I under which this action is brought.

We find the logical leap that defendants urge us to make from the inclusion in the Agreement of language similar to ERISA's exclusive benefit rule and a reference to § 401(a) of the Internal Revenue Code, to the conclusion that the Canadian court will be compelled to apply ERISA itself to the agreement to be tenuous at best. The ERISA claims that plaintiffs raise before this court have not been brought before the Canadian court, and indeed, the plain language of ERISA's grant of exclusive jurisdiction over such claims to the United States District Courts appears to preclude the Canadian court from hearing them even if they were raised there. While the common law analysis the Canadian court will employ to dispose of the claims before it may share similarities with the analysis this court would apply to plaintiffs' ERISA claims, to say that they are fungible and interchangeable is in effect to eviscerate the exclusive jurisdiction provision that Congress explicitly included in ERISA.

We therefore find that plaintiffs' ERISA claims would be lost if they were forced to press their grievances only before a Canadian court, and we further find that such loss could be of material significance to plaintiffs' case. This consideration, in con-junction with our analysis above indicating that these two actions will not require either this court or the Canadian court to exercise *quasi in rem* jurisdiction within the meaning of *Princess Lida,* leads us to conclude that the *Princess Lida* doctrine does not compel dismissal of this case.

## IV. FORUM NON CONVENIENS

■ The next basis urged by defendants for dismissal is *forum non conveniens.* This doctrine allows a court to decline to exercise jurisdiction over a case for prudential reasons, even though its jurisdiction is otherwise proper. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–08, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947). The power to dismiss a case on *forum non conveniens* grounds is discretionary with the district court. It is a "flexible" doctrine whose "contours" are not "rigid," and the court's determination is based on a whole range of "private and public interest" factors, no one of which is primary or controlling. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981).

In applying the doctrine, "a plaintiff's choice of forum should rarely be disturbed," *Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. at 258, particularly where, as here, it is plaintiffs' home forum,[7] *id.* at 255, 102 S.Ct. at 265–66; and "the defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis." *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43–44 (3d Cir.1988). The Third Circuit has held that even where the plaintiff was neither a citizen *nor* a resident of the United States, the defendant must show that "the private and public interest factors weigh heavily on the side for dismissal." *Lony v. E.I. Du Pont de Nemours & Co,* 935 F.2d 604, 609 (3d Cir.1991) (quoting *Lacey,* 862 F.2d at 44).

We have already held, in connection with the *Princess Lida* analysis above, that plaintiffs will lose their ERISA claims if

---

**7.** Although citizens of Canada, the two plaintiffs have been residents of New Jersey for nine and sixteen years.

forced to go forward only in Canada, and that such loss would be prejudicial to plaintiffs. Plaintiffs argue that this factor alone precludes dismissal on *forum non conveniens* grounds. Defendants, however, point to the Supreme Court's opinion in *Piper Aircraft*, which held that the fact that a change in forum will alter the substantive law to be applied to a controversy "should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper Aircraft*, 454 U.S. at 247, 102 S.Ct. at 261.

*Piper Aircraft* itself is clearly not dispositive of the issue presently before us, since that case involved common law tort claims rather than federal statutory claims as to which United States federal courts have been granted exclusive jurisdiction. Only one case has been cited to the court in which *forum non conveniens* analysis was applied to an ERISA case, *Lawford v. New York Life Insurance Co.*, 739 F.Supp. 906 (S.D.N.Y.1990). There, the district court declined to dismiss on *forum non conveniens* grounds, even though "the focus of the litigation [was] closer to Canada than New York," in part because "plaintiff's ERISA claims would be lost if plaintiff were required to bring his action in Canada." *Id.* at 920.

Defendants bring to our attention a recent First Circuit case in which the court held that the potential loss of the plaintiff's federal securities claims, over which the federal courts have exclusive jurisdiction, was *not* a factor weighing against *forum non conveniens* dismissal. *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944 (1st Cir.1991). There the court reasoned that since "Canadian courts will either apply American law ... or they will apply Canadian laws that offer shareholders somewhat similar protections," the plaintiff's case would not be prejudiced. *Id.* at 948.

■ The fact that the First Circuit apparently considers United States and Canadian securities laws to be fungible, however, does not change our analysis as to the uniqueness of plaintiffs' ERISA claims. Congress enacted ERISA for the explicit purpose of protecting "the interests of par-

ticipants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and *ready access to the Federal courts.*" 29 U.S.C. § 1001(b) (emphasis added). In light of such language, it seems clear that application of *forum non conveniens* in such a way as to deny an ERISA plaintiff access to the United States federal courts should not be undertaken lightly. We are therefore inclined to follow the *Lawford* court in concluding that the potential loss of plaintiffs' ERISA claims, if not a controlling factor, is at least a substantial factor weighing against dismissal.

The other "private and public interest factors" to be considered have been identified by the Supreme Court as follows:

> The ... private interest [factors] ... include[ ] the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate; and all other practical problems that make trial of a case easy, expeditious and inexpensive." The public [interest] factors ... include[ ] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6 (quoting *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843).

Defendants have listed numerous factors which they argue weigh in favor of *forum non conveniens* dismissal in this case. These include the fact that the pension fund itself, the NHL Pension Society, Manulife, many of the plan participants and

beneficiaries, and various potential witnesses are located in Canada.[8] Plaintiffs respond by pointing out that fifteen of the twenty-two NHL member clubs are located in this country, that the NHL itself has an office in New York City, and that 38 percent of the plan participants reside in the United States (as opposed to 58 percent who reside in Canada).

■ Considering the case solely from the perspective of the availability of sources of proof and convenience to witnesses, it seems that the balance tips in favor of dismissal, though not overwhelmingly so. When we add to the analysis, however, the fact that plaintiffs have chosen their home forum, and that plaintiffs will lose their ERISA claims if this case is dismissed, we are compelled to conclude that defendants have failed to meet their burden of showing that all of the factors weigh heavily in favor of dismissal. We therefore decline to dismiss on *forum non conveniens* grounds.

## V. THE COLORADO RIVER ABSTENTION DOCTRINE

■ In *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court created a residual, catch-all category of abstention for certain "exceptional" circumstances in which, even though none of the standard abstention doctrines apply, abstention is nonetheless appropriate for reasons of "wise judicial administration." [9] *Id.* at 817, 96 S.Ct. at 1246. This doctrine encompasses the *Princess Lida* rational for declining jurisdiction, *see id.* 424 U.S. at 818, 96 S.Ct. at 1246–47, but also includes other considerations. Defendants have extracted from the *Colorado*

*River* opinion and a subsequent Supreme Court case, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the following factors to be considered by courts in applying this doctrine:

1) a court first exercising jurisdiction over property "may exercise that jurisdiction to the exclusion of other courts"; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained; 5) whether the source of the governing law is federal or state (translate here to Canadian); and 6) the adequacy of the state tribunal (translate here to Canadian tribunal) to protect the plaintiff's rights.

With respect to the case at issue here, the *Colorado River* abstention doctrine adds little or nothing to the analysis already completed under the *Princess Lida* and *forum non conveniens* doctrines. The above factors essentially restate the same considerations involved in those analyses. The first and fourth factors obviously restate the *Princess Lida* doctrine, which we have already found does not mandate dismissal of this case. While the second and third factors might be said to weigh in favor of dismissal here, they are clearly outweighed by the fifth and sixth factors, just as in our *forum non conveniens* discussion above we concluded that the logistical considerations of availability of and convenience to witnesses were outweighed by the facts that plaintiffs ERISA claims can only be adjudicated by this court and that this is their home forum. Therefore, we hold that the *Colorado River* abstention doctrine does not require dismissal of this case.

---

**8.** Defendants also point to the existence of certain blocking and business secrecy laws in Quebec and Ontario which they claim will make it difficult to obtain relevant testimony and documents from third party witnesses in those provinces. We find this argument particularly speculative at this stage since there has been no showing that such evidence will in fact be needed, since the plan documents themselves are required to be made available to plan participants under ERISA, 29 U.S.C. § 1024(b)(4), and since plaintiffs in the Canadian action would presumably have no reason not to cooperate

with plaintiffs in this action in sharing discovery.

**9.** Although *Colorado River* involved abstention of a federal court proceeding in favor of a concurrent state court proceeding, it has also been applied where the alternative action is in a foreign tribunal. *See e.g. Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193 (9th Cir.1991); *Ingersoll Milling Machine Co. v. Granger*, 833 F.2d 680, 684–86 (7th Cir.1987).

## VI. CONCLUSION

For the foregoing reasons, defendants motions to dismiss are denied.