987 F.2d 172
 61 USLW 2542, 16 Employee Benefits Cas. 1609
 Robert DAILEY; Reggie Leach, on behalf of themselves and
all others similarly situated
v.
THE NATIONAL HOCKEY LEAGUE; The National Hockey League
Pension Society; The Manufacturers Life Insurance Company;
John Ziegler; Boston Professional Hockey Association, Inc.;
Calgary Flames Hockey Club; Chicago Blackhawk Hockey Team,
Inc.; Detroit Red Wings, Inc.; Edmonton Oilers Hockey,
Ltd.; 8 Hockey Ventures, Inc.; Hartford Whalers Hockey
Club; Le Club De Hockey Canadien, Inc.; Le Club De Hockey
Les Nordiques; L.A. Kings, Ltd.; Maple Leaf Gardens
Limited; Meadowlanders, Inc.; Nassau Sports; New York
Rangers Hockey Club, a Division of Madison Square Garden
Center, Inc.; Niagara Frontier Hockey, L.P.; Northstar
Hockey Club; Philadelphia Flyers Limited Partnership;
Pittsburgh Penguins, Inc.; St. Louis Blues Hockey Club,
L.P.; Vancouver Hockey Club, Ltd.; Washington Hockey
Limited Partnership, Appellants.
 No. 92-5156.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 21, 1992.
Decided Feb. 18, 1993.
Sur Petition for Rehearing March 19, 1993.
 
 Richard P. McElroy (Argued), Stephen M. Orlofsky, Ann B. Laupheimer, Jane C. Silver, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for all appellants except The Manufacturers Life Ins. Co.
 Daniel Segal, Claire Rocco, Hangley, Connoly, Epstein, Chicco, Foxman & Ewing, Philadelphia, PA, Steuart Thomsen, Sutherland, Asbill & Brennan, Washington, DC, for The Manufacturers Life Ins. Co.
 Joseph H. Kenney (Argued), Mark Schwartz, Kenney & Kearney, Cherry Hill, NJ, Edwin T. Ferren, III, Richman & Ferren, David E. Ferguson, Haddonfield, NJ, for appellees.
 Before: HUTCHINSON, ALITO and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is a permitted interlocutory appeal by defendants pursuant to 28 U.S.C. § 1292(b) from an order of the district court denying their motion to dismiss. The district court granted defendants' motion to certify the following question:
 
 
 2
 Does the assertion by the plaintiff of a claim under ERISA over which there is exclusive jurisdiction in federal court preclude dismissal under the doctrine of forum non conveniens and likewise preclude dismissal based on lack of subject matter jurisdiction under Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939)?
 
 I. Factual Background
 
 3
 This class action was instituted in the district court by a group of former hockey players ("Players" or "plaintiffs") in the National Hockey League ("NHL"). It was filed against the NHL; the National Hockey League Pension Society ("Pension Society"); the Manufacturers Life Insurance Company ("Manulife"); John Ziegler, the president of the NHL; and all member clubs of the NHL (collectively, the "League" or "defendants").
 
 
 4
 The Players alleged that the League breached the fiduciary duties it owed them as well as terms of the NHL Pension Plan and Trust Agreement ("trust" or "agreement"). They also alleged violations of various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., involving the funding, administration, and management of the National Hockey League Pension Plan and Trust ("pension plan").
 
 
 5
 The NHL established a pension plan in 1947 and first embodied it in a written agreement in 1967.[1] It was amended several times between 1967 and 1986. Under the original agreement, both players and their respective member clubs were to make contributions to the plan. After the first amendment, players were no longer required to make contributions. Instead, the member clubs provided full funding for the plan. Funds in the plan were invested in a group annuity contract with defendant Manulife. It is the surplus generated under this contract and the League's treatment of it which forms the basis for the two suits.
 
 
 6
 The pension plan contained provisions which required that all surplus funds generated by the plan be used solely for the benefit of the participating players and their beneficiaries. Any surplus generated was to be allocated to the participating players' accounts at five-year intervals. The plan also prohibited amendments of the agreement to the detriment of the participants prior to the satisfaction of all liabilities under the plan.
 
 
 7
 The League moved to dismiss this action for lack of subject matter jurisdiction based on the existence of a case pending in a Canadian court at the time this action was commenced. It also moved to dismiss on forum non conveniens grounds.
 
 
 8
 The Canadian action was made a "representative" action by the Canadian court (analogous to our class action). The Canadian class represents only those players who retired before July of 1982, whereas the class in this action includes those players who retired prior to 1988.[2] The defendants in both actions are identical except that the NHL is not named as a defendant in the Canadian action.
 
 
 9
 Although the claims asserted in the action before this court are based primarily on ERISA, whereas the claims in the Canadian action are based on Canadian law, both actions allege the same wrongdoing and seek similar relief.
 
 
 10
 The applicants (plaintiffs) in the Canadian action seek:
 
 
 11
 1. A declaration that all pension surpluses accruing between 1947 and December 9, 1983 are to be allocated among the plan participants and their beneficiaries.
 
 
 12
 2. An order that the surpluses transferred to the member clubs and the Pension Society be allocated to the plan participants and their beneficiaries.
 
 
 13
 3. A declaration that the Pension Society and the NHL are in breach of their legal and fiduciary duties for their actions in contravention of the plan agreement relating to the use of and allocation of surplus.
 
 
 14
 4. A declaration that any amendments to the pension plan are null and void to the extent they allocate surplus to persons other than plan participants and their beneficiaries.
 
 
 15
 5. An order that the Pension Society allocate surplus currently held to the plan participants and their beneficiaries and that the member clubs make restitution of any shortfalls arising from their improper receipt of funds from the pension plan.
 
 
 16
 6. An accounting of funds allocated or to be allocated among the plan participants and their beneficiaries.
 
 
 17
 7. An order replacing the Pension Society as trustee and appointing a new trustee.
 
 
 18
 8. An award of costs on a solicitor-and-his-own-client basis.
 
 
 19
 As noted, the plaintiffs in this action seek essentially the same relief. No liquidated damages issue is involved in the present context.
 
 
 20
 The district court denied the League's motion to dismiss. In doing so, it rejected defendants' argument that dismissal was warranted under the Princess Lida doctrine and on grounds of forum non conveniens. Our review here under 28 U.S.C. § 1292(b) is limited to questions of law raised by the order. United States v. Stanley, 483 U.S. 669, 677, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987); Ivy Club v. Edwards, 943 F.2d 270, 275 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992). In deciding these questions, however, we are not constrained by the question certified, rather "we may address any issue necessary to decide the appeal before us." Ivy Club, 943 F.2d at 275 (citing Morse/Diesel, Inc. v. Trinity Indus., Inc., 859 F.2d 242, 249 (2d Cir.1988)). Because the Supreme Court in Princess Lida formulated its doctrine in terms of subject matter jurisdiction, we will first address that issue.
 
 
 21
 The principal certified question is whether the assertion of a claim under ERISA, which is subject to exclusive federal court jurisdiction, precludes dismissal under the Princess Lida doctrine. However, we think it is preferable to consider first whether Princess Lida is applicable without regard to ERISA. We proceed to that task.
 
 II. Princess Lida
 
 22
 In Princess Lida, trustees of a fund in which Lida and her sons were beneficiaries brought an accounting action in the Common Pleas Court of Fayette County, Pennsylvania. Thereafter, Lida and one of her sons brought suit in the district court alleging that the trustees had mismanaged the trust funds and praying for a removal of the trustees and a restoration of corpus. Princess Lida v. Thompson, 305 U.S. 456, 458-60, 59 S.Ct. 275, 277-78, 83 L.Ed. 285 (1938). The Supreme Court held that the earlier accounting action was quasi in rem and that the district court lacked subject matter jurisdiction. Id. at 465-68, 59 S.Ct. at 280-81. This holding was based on the doctrine which prevents a court in which an action is filed from exercising jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought. As the Court said in Princess Lida:
 
 
 23
 We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized ... but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.
 
 
 24
 Id. at 466, 59 S.Ct. at 280 (footnote and citations omitted). Our future reference to the Princess Lida doctrine will embrace only the quoted language of the opinion.
 
 
 25
 The quoted principle of Princess Lida was well established in prior Supreme Court precedents. See United States v. Bank of N.Y. & Trust Co., 296 U.S. 463, 477-78, 56 S.Ct. 343, 347-48, 80 L.Ed. 331 (1936); Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935). Its continuing validity is undisputed. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citing Princess Lida, among other cases, and stating that "[a] court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts"); Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir.1991) (stating, in an in rem context, that the rule of Princess Lida is "equally applicable to requested interference by American courts with a res under the jurisdiction of a foreign court").
 
 
 26
 The district court recognized that "the instant actions do involve the administration of a trust" but then went on to conclude that "every suit that involves the administration of a trust fund does not invoke the Princess Lida doctrine" and that the doctrine was inapplicable in this case. Dailey v. National Hockey League, 780 F.Supp. 262, 267 (D.N.J.1991). This conclusion was based, in part, on the court's determination that the suit brought in Princess Lida required "far more comprehensive control by the court over the administration of the trust than is sought in the cases at issue here." Id. In finding Princess Lida inapplicable, the district court concluded that the two actions, to the extent they sought money damages from third parties, specifically the member clubs and Manulife, were in personam actions. Id. at 267-68. The district court, applying what it termed a "pragmatic" approach, concluded that, despite the fact that injunctive relief is sought in both suits, there was no danger of conflicting orders arising between the two courts and therefore it was unnecessary to apply the doctrine in this case. Id. at 268. The court reached this conclusion by relying on its view that a decision in the Canadian action would be rendered "well before this court has reached a stage at which we could consider ordering relief." Id. The court stated "[w]e will therefore have the benefit of knowing what relief has been ordered by the Canadian court and will be able to tailor our own order accordingly." Id.
 
 
 27
 We find that the district court's approach is flawed at the outset. Princess Lida is a "mechanical rule" which requires that the court in which the second suit is brought yield its jurisdiction if the requisite "property" showing is made. See PPG Indus., Inc. v. Continental Oil Co., 478 F.2d 674, 677 (5th Cir.1973) (stating that Princess Lida is a "virtually mechanical in rem rule"); Crawford v. Courtney, 451 F.2d 489, 492 (4th Cir.1971) (stating that Princess Lida-type abstention is "compulsory," not discretionary); Ewald v. Citizens Fidelity Bank & Trust Co., 242 F.2d 319, 322 (6th Cir.1957) (stating that where Princess Lida applies the court where the action is first filed has "exclusive jurisdiction, and the federal court [has] no right to interfere with the pending litigation"). Thus, the district court erred in justifying its jurisdictional decision by reliance in part on future developments.[3] That approach would leave the subject matter jurisdiction of the district court in a judicial limbo.
 
 
 28
 Princess Lida applies when: (1) the litigation in both the first and second fora are in rem or quasi in rem in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court. Princess Lida v. Thompson, 305 U.S. at 466, 59 S.Ct. at 280.
 
 
 29
 As to the first requirement, the parties tacitly agree that the actions are not in rem. However, both actions, in part, involve the "administration and restoration of corpus" and are not "merely an adjudication of [a party's] right or ... interest" nor "strictly in personam." Id. at 466-67, 59 S.Ct. at 280-81. They intimately involve the validity of terms of the pension plan and their general application to the trust funds. We, therefore, conclude that the actions are quasi in rem within the meaning of Princess Lida. See Shaw v. First Interstate Bank of Wis., N.A., 695 F.Supp. 995, 999 (W.D.Wis.1988) (stating that the phrases in rem and quasi in rem are "of little use by themselves in determining [jurisdiction.] The important question is whether th[e] action falls within the term quasi in rem as it was used by the U.S. Supreme Court in Princess Lida "). The primary relief sought in both actions is the restoration of trust funds which were allegedly misappropriated. This is precisely the situation which was at issue in Princess Lida and which the court stated was encompassed within the term quasi in rem. See In re Solar Mfg. Corp., 200 F.2d 327, 332 (3d Cir.1952) (stating that an action for the restoration of trust funds is quasi in rem ), cert. denied, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953). We therefore turn to the question of whether the claims are essentially the same.
 
 
 30
 The applicants in the Canadian suit seek both restoration of corpus and injunctive relief prohibiting the continued improper use of surplus funds and requiring proper allocation of the diverted funds by the pension fund. They also seek an accounting and removal of the trustee. Similar relief is sought by the plaintiffs in this case. Thus, the relief sought in the district court at the time the action was filed would require the district court to exercise control over the same property that is subject to the control of the Canadian court as well as requiring it to determine the future status of the incumbent Canadian trustee. To us, this is assuredly the type of legal disharmony the Princess Lida Court sought to avoid. Having found that both requirements are met, we conclude that the district court "must yield" its jurisdiction,[4] unless ERISA dictates otherwise. We address that frontier issue.[5]
 
 III. Impact of ERISA
 
 31
 The district court based its decision, in part, upon its conclusion that application of the Princess Lida doctrine would result in the loss of plaintiffs' ERISA claims,[6] claims which are subject to the exclusive jurisdiction of the United States federal courts.
 
 
 32
 The district court relied primarily on Levy v. Lewis, 635 F.2d 960 (2d Cir.1980), for the proposition that Princess Lida is inapplicable when dismissal would result in the loss of ERISA claims which are subject to the federal courts' exclusive jurisdiction.
 
 
 33
 The district court's reliance on Levy is misplaced. In Levy, the court found that abstention as to certain ERISA claims which were subject to concurrent federal and state jurisdiction was appropriate under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[7]
 
 
 34
 It was in this context that the Second Circuit cited Princess Lida. Though the court went on to conclude that abstention was inappropriate as to additional ERISA claims which were subject to the exclusive jurisdiction of the federal courts, this discussion was limited to abstention under Younger [v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ] and Colorado River. Levy, 635 F.2d at 967 ("The ability to raise federal claims in state proceedings has always been a prerequisite to Younger abstention, and it is clear as well that abstention for purposes of judicial economy under Colorado River applies only where concurrent federal-state jurisdiction exists."). The court's conclusion in Levy, based on discretionary abstention doctrines, has no application to the question of the district court's jurisdiction under the mandatory rule of Princess Lida.
 
 
 35
 Relying on the exclusive jurisdictional provisions of ERISA, the district court concluded that "plaintiffs' ERISA claims would be lost if they were forced to press their grievances only before a Canadian Court, and ... such loss could be of material significance to plaintiffs' case." Dailey, 780 F.Supp. at 271. It concluded that this consequence, in conjunction with its finding that the actions were not in rem or quasi in rem within the meaning of Princess Lida, did not compel dismissal under Princess Lida. Id.
 
 
 36
 We observe as a preliminary matter that we are not involved with the continuing viability of the Princess Lida doctrine in a situation involving ERISA and concurrent proceedings in two United States' courts. We are, however, concerned with the continuing applicability of that doctrine in a quasi in rem context where a district court has jurisdiction but a foreign court also has jurisdiction to entertain claims over the same alleged wrongdoing and can grant similar relief. We have been unable to find any caselaw, other than the district court's opinion in this case, addressing this issue in a Princess Lida context.
 
 
 37
 The considerations that dictate the proper result are far from clear. In conducting our analysis we recognize the strong public policy reflected in ERISA designed to protect pension rights. However, the potential for conflicting determinations clearly exists here as to some aspects of the "property" issues involved. This possibility calls into play the considerations that in part prompted the formulation of the Princess Lida doctrine. We therefore conclude that ERISA does not negate the continuing applicability of Princess Lida under the present facts.
 
 
 38
 We believe our determination is consistent with decisions of other courts that have upheld the dismissal of claims subject to the exclusive jurisdiction of the federal courts. In Howe v. Goldcorp Investments, Ltd., 946 F.2d 944, 952 (1st Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992), the court upheld the district court's dismissal of plaintiff's private securities law action against a Canadian corporation under the doctrine of forum non conveniens despite the fact that these claims were subject to the exclusive jurisdiction of the federal courts. The court stated that "Canadian courts will either apply American law ... or they will apply Canadian laws that offer ... somewhat similar protections...." Id. In reaching this conclusion that court relied on Supreme Court precedent which requires that the "possibility of an unfavorable change in law" not be considered unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). See Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768-69 (9th Cir.1991) (relying on Piper and stating that the possible loss of statutory claims (RICO and Lanham Act) did "not furnish a sufficient reason to preclude dismissal").
 
 
 39
 The district court, in its discussion of forum non conveniens, found that the "uniqueness of plaintiffs' ERISA claims" made Howe inapplicable. Dailey, 780 F.Supp. at 272. We find Howe to be persuasive in its treatment of the loss of claims subject to the exclusive jurisdiction of the federal courts and we think its approach is equally applicable to the question of dismissal under the Princess Lida doctrine. We say this because it is difficult to see how dismissal could be possible under forum non conveniens but at the same time not an available remedy under Princess Lida.
 
 
 40
 Given our conclusion, the certified question requires us to go no further at this point. Our conclusion also renders it unnecessary to consider the certified question dealing with the forum non conveniens ruling of the district court.
 
 
 41
 The order of the district court will be reversed.
 
 
 42
 ALITO, Circuit Judge, dissenting.
 
 
 43
 It is undisputed that ERISA was meant to govern the National Hockey League's pension plan. The majority, however, relying on what it forthrightly describes as a " 'mechanical' " application of the Princess Lida doctrine,[1] has prevented the plan's beneficiaries from seeking to enforce some of their ERISA rights. Instead, the majority in effect holds that the beneficiaries must rely entirely on Canadian law. I do not believe that the Princess Lida doctrine dictates such a result.
 
 
 44
 The Princess Lida doctrine was developed to prevent conflicts between courts in this country. In Princess Lida itself, the Court observed that "[t]he doctrine is necessary to the harmonious cooperation of federal and state tribunals." 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939). See also United States v. Bank of New York & Trust Co., 296 U.S. 463, 477-78, 56 S.Ct. 343, 347-48, 80 L.Ed. 331 (1936); Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935). When the doctrine is applied in that context, federal statutory rights are not eradicated.
 
 
 45
 The majority in this case has applied the Princess Lida doctrine in an entirely different context and in doing so has abrogated federal statutory rights. Neither the majority nor the appellants have cited any precedent supporting such a result.[2]
 
 
 46
 The appellants contend that the loss of the plaintiffs' ERISA rights is insignificant because Canadian law "provides protections similar to those provided by U.S. law." Appellants' brief at 25. In my view, however, it makes no difference whether Canadian law is similar to or even in some sense better than ERISA. What matters is that Congress wanted ERISA to govern the NHL pension plan, but the majority has frustrated the implementation of that intent.
 
 
 47
 I think that the district court's approach is preferable to a mechanical application of the Princess Lida doctrine. The district court proposed to retain jurisdiction and adjudicate the plaintiffs' ERISA claims but to monitor developments in the Canadian litigation and address any real conflicts concerning the administration of the plan if they arose. See Dailey v. National Hockey League, 780 F.Supp. 262, 268 (D.N.J.1991). This approach accommodates the principle of comity underlying the Princess Lida doctrine without sacrificing the plaintiffs' ERISA rights.[3] Because I agree with the district court's decision, I respectfully dissent.[4]
 
 SUR PETITION FOR REHEARING
 
 48
 March 19, 1993.
 
 
 49
 Present: BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and SEITZ,* Circuit Judges.
 
 
 50
 HUTCHINSON, Circuit Judge.
 
 
 51
 The petition for rehearing filed by appellees in the above captioned matter having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 52
 Judge Alito would grant in banc rehearing.
 
 
 53
 The plan, under United States tax law, is designated as a "foreign situs" trust. See, e.g., 42 U.S.C.A. § 404(a)(4) (West Supp.1992).
 
 
 
 [2]
 The parties make no point of this distinction in connection with arguments directed to the application of Princess Lida. We will do the same
 
 
 [3]
 The district court relies, in part, on Levy v. Lewis, 635 F.2d 960 (2d Cir.1980) in its discussion of ERISA and Princess Lida. Though the district court does not appear to rely on Levy in adopting its discretionary approach to the application of Princess Lida, it may have read language in Levy as establishing such an approach. See Levy, 635 F.2d at 965-66 (stating that "[Princess Lida ] is more accurately described as a prudential doctrine in which a second court with concurrent jurisdiction will exercise its discretion to defer to another court...."). This language is inconsistent with earlier Second Circuit precedent which establishes that Princess Lida is not a discretionary doctrine. See Beach v. Rome Trust Co., 269 F.2d 367, 371 (2d Cir.1959) ("[Princess Lida] requires a federal court to dismiss any claim with regard to the property where the adjudication would interfere with the proceedings in [another] court.... This principle is so firmly rooted in our law as to have required and not merely permitted [dismissal]." (citations omitted))
 
 
 [4]
 Since this appeal was argued, the Canadian trial court has granted essentially all the relief requested in that action except the removal of the trustee. We are advised that there will be an appeal. Thus, the Ontario Court of Justice declared that "[a]ll excess Plan funds ... are to be allocated exclusively among the applicable participants to purchase for them additional pension benefits[.]" Bathgate v. National Hockey League Pension Soc'y, 1992 Ont.C.J. LEXIS 1830, at (Oct. 21, 1992). The court ordered that an accounting be made and that the action be referred to a master who would determine "the actual amount of excess funds ... and the manner and timing of distribution of such funds...." Id. at Though we have reached our decision in this case by looking to what was sought in the Canadian action, the same conclusion would follow from looking to the relief which was granted by the Ontario Court of Justice. Despite that decision, both sides press us to decide this appeal
 
 
 [5]
 Both parties concede that the ERISA claims, as such, cannot be tried in the Canadian action
 
 
 [6]
 Plaintiffs alleged that defendants' conduct was a breach of the fiduciary duty owed them under ERISA, 29 U.S.C. § 1104 and violated the exclusive use provisions of 29 U.S.C. § 1103(c)(1)
 
 
 [7]
 In Colorado River, the Supreme Court noted that in limited circumstances where two courts are contemporaneously exercising concurrent jurisdiction abstention is appropriate for "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. 424 U.S. at 817, 96 S.Ct. at 1246 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952))
 Majority at 176, quoting PPG Indus., Inc. v. Continental Oil Co., 478 F.2d 674, 677 (5th Cir.1973).
 
 
 [2]
 In support of the proposition that the Princess Lida doctrine applies to conflicts between an American court and a foreign court, the majority cites one case, Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir.1991), but I believe that Chesley is very different from the present case
 Chesley grew out of the release of a toxic chemical from a pesticide plant in Bhopal, India, that resulted in thousands of deaths and injuries. Suits against Union Carbide were filed in India and in this country, but the suits in this country, which were consolidated in the Southern District of New York, were dismissed on the ground of forum non conveniens. Id. at 61. After the Indian litigation was settled and the settlement funds were placed under the supervision of the Supreme Court of India, the attorneys who had filed suit in this country moved in the Southern District of New York for attorneys' fees and expenses. The district court dismissed these claims, and the court of appeals affirmed. The court of appeals held that the prior forum non conveniens dismissal did not automatically preclude the district court from exercising ancillary jurisdiction but that exercise of such jurisdiction would have constituted an abuse of discretion because it would have interfered with the supervision of the settlement fund by the Supreme Court of India. It was in this context that the court of appeals stated that the Princess Lida doctrine applies to "requested interference by American courts with a res under the jurisdiction of a foreign court." Id. at 66.
 In my view, the holding in Chesley means that a district court, in determining whether to exercise ancillary or "supplemental" jurisdiction (28 U.S.C. § 1367 (West Supp.1992)), should carefully consider whether doing so would interfere with a foreign court's jurisdiction over a res. I do not believe that Chesley stands for the proposition that the Princess Lida doctrine automatically dictates dismissal of an action in a United States court even if the result will be the loss of important federal statutory rights.
 
 
 [3]
 As the majority notes (Majority at 177 n. 4), after this appeal was argued, the Canadian trial court issued a decision granting much of the relief that the plaintiffs in this case requested. Because this decision has been appealed and accordingly may be reversed in whole or part, I agree with the majority and with both sides that the Canadian trial court decision does not fundamentally alter the question before us
 
 
 [4]
 In addition to refusing dismissal based on the Princess Lida doctrine, the district court also refused to dismiss on the ground of forum non conveniens. Applying the standards set out in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and related decisions of this court, I would sustain the district court's decision on the forum non conveniens question
 
 
 *
 Hon. Collins J. Seitz, United States Circuit Judge, was limited to voting for panel rehearing